## JOE E. WILLIAMS V. F. M. AND E. E. GRAVES.

### No. 552.

1.  **Contract by Married Woman for Sale of Land.**—A married woman in writing or otherwise can not bind herself by a contract to sell.  Freedom of the wife to retract at the last moment being essential to a valid sale, a contract the effect of which would bind her not to retract would be void.

2.  **Consideration.**—Husband and wife were negotiating with a purchaser for the exchange of her property for consideration partly money and partly in lands.  The parties verbally agreed upon the trade, and the purchaser gave to the wife a writing promising to comply with the terms.  *Held*, that as the wife's promise was void, his written obligation was without consideration and could not be enforced against him by suit of the wife.

3.  **Option—Consideration—Withdrawal.**—A contract by which the owner of property agrees with another that he shall have the right to buy the property at a fixed price within a certain time is an option, and if based upon a valid consideration, may be enforced.  An offer to sell may be withdrawn at any time before acceptance, unless the offer itself is based upon a consideration other than the named price of the property.  The mere statement by the married woman that she accepted an offer is not a legal acceptance, and there being no consideration, she can not enforce the performance of the offer.

4.  **Specific Performance.**—If the husband and wife, as alleged, yielded the possession of her property to the purchaser, and he held it under the contract, she could compel specific performance on part of the purchaser.  The allegation in the petition, of the contract, the performance on part of the wife joined by husband, and the refusal of the defendant to comply with his written promise, made the petition good.  But the trial court, having refused to submit this issue, was in error, for which the judgment is reversed.

APPEAL from Hamilton.   Tried below before Hon. C. K. BELL.

*J. A. Eidson*, for appellant.—1.  To entitle a party to specific performance the contract must be mutual; that is, it must be capable of being enforced by either party, and must be based upon a consideration.   De Cordova v. Smith, 9 Texas, 129;  Waterm. on Spec. Perf., secs. 186, 196, 200;  Tarr v. Scott, 4 Brews. (Pa.), 49;  Luse v. Deitz,

46 Iowa, 205; Watts v. Kenny, 23 Am. Dec., 266; Richards v. Doyle, 38 Am. Rep., 550; Bodine v. Gladney, 59 Am. Dec., 749; Hawralty v. Warren, 90 Am. Dec., 613.

2. An offer to sell or exchange land may be withdrawn at any time before it is legally accepted so as to bind the party to whom it is made, or is acted upon by such party so as to render it inequitable to him to allow the withdrawal of such offer. Patton v. Rucker, 29 Texas, 408; Waterm. on Spec. Perf., sec. 134; Wardell v. Williams, 4 Am. St. Rep., 814.

3. A married woman is incapacitated either in person or by her husband, as agent, to make an executory contract for the sale of her separate property, a part of the homestead, so as to bind her. Goff v. Jones, 63 Texas, 249; Cannon v. Boutwell, 53 Texas, 626; Peak v. Brinson, 71 Texas, 310.

4. Where there is no such memorandum in writing as would avoid the statute of frauds, then in order to authorize a decree of specific performance, it must appear that such acts have been performed under the parol contract as would constitute a fraud upon the party seeking specific performance if it was not granted. Woolridge v. Hancock, 70 Texas, 18; Ann Berta Lodge v. Leverton, 42 Texas, 18; Eason v. Eason, 61 Texas, 227; Wells v. Davis, 77 Texas, 636; Ward v. Stewart, 62 Texas, 335; Murphy v. Still, 43 Texas, 123; Hibbert v. Aylott, 52 Texas, 530.

5. Possession in order to avoid the statute of frauds, if same will do so at all, must be actual and exclusive. Ann Berta Lodge v. Leverton, 42 Texas, 18; Robinson v. Davenport, 40 Texas, 342; Bradley v. Owsley, 74 Texas, 69; Wells v. Davis, 77 Texas, 636; Morris v. Gaines, 14 S. W. Rep., 538; Waterm. on Spec. Perf., sec. 276; Brown on Stat. Frauds, secs. 472–474.

*Lindsey, Goodson & Thomas,* for appellees.—The rule, that to entitle a party to a specific performance the contract must, in its original obligation, be mutual, is subject to exceptions, one of which is that of optional or unilateral contracts; and such contracts need only be mutual in respect to the remedy; and the mutuality as to the remedy does not relate as to the time of the original contract, but to the time of the trial—that is, when the court at time of judgment is called on to enforce the same, can it then enforce the contract as originally made as to both parties? 90 Am. Dec., 613; 3 Am. St. Rep., 765; 67 Am. Dec., 500; 23 Am. Dec., 273; 42 N. Y., 493; 49 N. H., 444; 29 Me., 351; 97 Mass., 92; 3 Cush., 224; 6 Wend., 104; 9 Hare, 206; 13 Wright, 88, 89; 10 Nev., 355; 40 Cal., 63; 69 Pa., 474; 20 Ohio, 223; 66 Me., 118; 24 Wis., 446; 29 Ind., 260; 24 Ind., 317; 33 Texas, 91; 4 Minn., 141; 18 Ohio St., 126; Adams' Eq., p. 198; 5 Waitt, 788; 1 Sudg. on Vend., 241, 242, 246; 2 Story's Eq. Jur., 736; Pom. on Spec. Perf., secs. 167–

172, 293, and notes; 3 Pom. Eq. Jur., art. 1405, note 1, p. 448; Fry on Spec. Perf., 2 Am. ed., art. 297; Snell Eq., p. 455; Benj. on Sales, arts. 254, 255, and notes.

KEY, ASSOCIATE JUSTICE.—Appellee, Mrs. E. E. Graves, joined pro forma by her husband, F. M. Graves, instituted this suit against appellant to compel him to perform an alleged contract, partly in writing and partly in parol. The plaintiffs' petition alleges in substance the following facts:

"That on and for many years prior to about the 15th day of July, 1890, the Graves mill and gin block was the community property of F. M. and E. E. Graves, and used, occupied, and claimed by them as a part of their rural homestead.

"That on or about the said 15th of July, F. M. Graves verbally released and conveyed to E. E. Graves all his interest in said property, and agreed that it should thereafter be the separate property of E. E. Graves, and that he would make and deliver at any time a conveyance in writing to the same, which he did on the 16th day of August, 1890. And that said properties continued to be a part of the homestead of the plaintiffs, though regarded and understood by them to be the separate property of E. E. Graves. That on the 4th day of August, 1890, the defendant, J. E. Williams, who then knew all the foregoing facts as to the status of said property between F. M. and E. E. Graves, and who treated and regarded it himself as the separate property of E. E. Graves in all his dealings in reference to it hereinafter set out, desiring to buy the same from the said E. E. Graves, represented to F. M. Graves, who was then the agent of E. E. Graves, and acting by her authority, and treated by said Williams as her agent, that he and his brother, E. R. Williams, were the joint owners of the northwest quarter of the Marcus Garcia league survey of land in Henderson County, Texas. And he further represented, that he had the authority from E. R. Williams to convey the interest therein of the said E. R. Williams in the contract hereinafter set out. And he then and there made the following contract with F. M. Graves, as the agent of E. E. Graves: He agreed to sell and convey both his own and the interest of E. R. Williams in said Garcia survey to E. E. Graves, and in addition thereto, to execute and deliver to E. E. Graves his two promissory notes in writing for $600 each, bearing 12 per cent interest per annum from date, and payable December 31, 1890, and December 31, 1891, respectively, and that they should be secured by retaining a vendor's lien on the Graves mill and gin block as purchase money therefor if the said E. E. Graves, joined by her husband, F. M. Graves, would make, execute, and deliver a sufficient deed of conveyance to the Graves mill and gin block and deliver possession thereof to him, and that said deed from E. E. Graves should retain said vendor's lien. He further agreed, that said

E. E. Graves should have the option of first examining said Garcia land, and then, if she desired to complete said trade on her part, he would make and deliver to her said conveyance to the same, and make and deliver said notes upon her paying to him the consideration therefor, which was to be her said deed to said Graves mill and gin block. And he further agreed, if said trade was accepted by her, to pay her expenses to Henderson County and back; all of which was fully assented to and accepted by E. E. Graves, through her said agent, and thereupon J. E. Williams reduced so much of said contract to writing as related to his said obligation to convey said Garcia land, and signed and delivered the same to her in pursuance of said contract, as his binding obligation to convey to her said land, and which was accepted by her as such, which said writing is as follows:

" 'THE STATE OF TEXAS, }
   " 'Hamilton County.      }

" ' Whereas F. M. Graves and myself have concluded a trade, the said F. M. Graves acting for his wife, E. E. Graves, by which I am to deed to E. E. Graves a certain tract of land in Henderson County, Texas, being about 1100 acres out of the northwest corner of the Marcus Garcia league, described in a deed to J. T. Williams, provided the said Graves agrees to take said land after seeing it, and further complies with his part of said trade. Now, if the said Graves, acting for his said wife, agrees to close said trade when he sees the land, and then carries out the terms of said trade on his part, then I agree to carry out my part, which includes making to E. E. Graves a deed, or causing it to be made, to said above land.        " 'JOE E. WILLIAMS.'

"That at the time of making said contract, it was the intention of the said Williams to give to E. E. Graves the option of purchasing said land, should she so desire, after examining it, and that he then knew that she was a married woman, and then knew the status of said Graves mill and gin block as hereinbefore stated, and then knew F. M. Graves had not then made and delivered to E. E. Graves a conveyance in writing to his interest therein, and that said E. E. Graves refused to enter into said contract, and refused to go and inspect said land unless the said Williams would obligate himself in writing to convey to her said land, should she elect to take the same, after inspecting it; and thereupon the said Williams executed and delivered to her said instrument, saying and agreeing at the time that he did not desire the said E. E. or F. M. Graves to reduce to writing or sign any part of said contract on their part, as the same was entirely optional with E. E. Graves after seeing said land to complete said trade or not. That the said E. E. Graves immediately had said land inspected by F. M.'Graves, who returned from said inspection to the town of Hamilton on the 9th

day of August, 1890, and immediately informed the defendant that E. E. Graves would accept said trade and would purchase said Garcia land, and that she would, joined by F. M. Graves, make and deliver to him the deed of conveyance to said Graves mill and gin block, which she had agreed to make, and would place him in possession of it; to all of which the defendant fully assented, and agreed to execute and deliver the said conveyance to the Garcia land, and to execute and deliver said notes as before described.

"That at the making and signing of said contract by said Williams, it was a part of said contract, that as F. M. Graves had not yet executed his deed to E. E. Graves to his interest in said Graves mill and gin block, that he would do so before the said E. E. Graves, joined by F. M. Graves, would make their said deed to Williams; and that all parties desired G. H. Goodson to prepare all the conveyances of all the parties, and that it was then understood that at the time F. M. Graves would return from inspecting said land the said Goodson would be absent from Hamilton, and that if said trade was closed on the return of said Graves, then all parties would wait about making and delivering their respective deeds until the said Goodson returned, and that when he returned he would prepare all the deeds to be passed in the matter, and then each party would sign, execute, acknowledge, and deliver them according to the foregoing contract. And that the said Goodson returned to Hamilton on the 13th day of August, 1890.

"That after the return of said Graves on the 9th of August, and after the said trade had been fully closed, the said J. E. Williams, regarding the same as fully closed, demanded possession from E. E. Graves of said Graves mill and gin block, which was delivered to him by the said F. M. Graves, which said demand was made and delivery given in pursuance of their said contract; and the said Williams at once took possession of said property as his own, went into actual possession of the same, used and claimed the same openly, notoriously, and exclusively as his own, made contracts with persons to operate the mill and gin thereon situated, hired persons to haul fuel to run said mill, employed persons to repair the machinery of said gin and mill, received from E. E. Graves the keys to said mill and gin building, and solicited from many persons custom for said mill and gin, took possession of the flouring machinery thereto attached, and offered and tried to sell the same as his own property, which possession, use, and claim of absolute ownership he did on his part in pursuance with said contract of purchase, and with the consent and authority of E. E. Graves, who delivered him said property, and entirely abandoned possession on her part in pursuance of their said contract; and that she has never received back possession of the same, but that the said Williams is still in possession thereof; and the defendant, Williams, did further, on the 10th day of August, 1890, and at the same time he

took possession of said property, and at the same time that he demanded of and recovered from E. E. and F. M. Graves the keys to and possession of said property, pay to the said E. E. Graves, on account of said purchase, the sum of $120.65, and which was received by the said E. E. Graves on said purchase, which was to be credited on the first note of said Williams to E. E. Graves; said payment was made by Williams and accepted by E. E. Graves in pursuance of said contract; that when the said Goodson returned to the town of Hamilton, on the 13th day of August, 1890, F. M. Graves, for himself and agent of E. E. Graves, at once went to the defendant, Williams, and notified him of the return of the said Goodson, and proposed to him, in pursuance of the understanding, that they go to his office and execute and deliver to each other said respective conveyances, and stated to him that said Goodson would prepare the conveyance contracted to said Williams to said property, and that F. M. and E. E. Graves would sign, acknowledge, and deliver to him said conveyance to said property, which he was then in possession of, and requested him to have prepared and delivered to E. E. Graves said conveyance to said Garcia land, when the defendant, saying he was busy at the time, agreed to do so later in the day, when he got at leisure; and late in the evening of said day F. M. Graves again went to him with the same request and demand, when the defendant then told him that some of the parties that had agreed to interest themselves with him had backed out, and that he did not see how he could carry out his trade, but that he was looking for a letter from his father that night, and he would let him know the next morning definitely about it; and that the said F. M. Graves came into town about sun-up the next morning and found the defendant in a buggy leaving town; and the defendant would not stop to talk about said matter with him, nor give him any time for E. E. Graves and himself to execute and tender to him said conveyance, but said that they need not do so, as he would not receive it, nor would make or deliver to E. E. Graves the conveyance to said Garcia land, nor make and deliver said notes; and immediately he left the State of Texas, and did not return until the 25th day of August, 1890; and as soon as he returned the said F. M. Graves tendered to him in person the conveyance to him to said property, duly signed and acknowledged by the said F. M. and E. E. Graves, in all respects according to the contract, and demanded of him that he execute and deliver to the said E. E. Graves said deed of conveyance to said Garcia land, and said two notes before described, on which first note plaintiffs agreed to place the credit of $120.65, which had been paid by said Williams, and also demanded of him the payment of $25, the expense incurred in investigating said land, and said Williams refused to accept said deed and refused to make and deliver to E. E. Graves said notes and the deed to the said Garcia land, and refused to

pay the said $25, and has ever since and still refuses to accept said deed or to deliver his said deed and notes and said $25, though the tender of the one and the demand as to the other have been repeatedly made to him and demanded of him.

"That at the times hereinbefore stated, the said E. E. Graves was lawfully seized and possessed by indefeasible title in fee simple of said Graves mill and gin block in her own separate right, and the same was free from any incumbrance whatever, and the conveyance she tendered the defendant did and would have conveyed a like estate to him, and the defendant well knew and still knows this; and the plaintiffs in this respect further say, that before the defendant agreed to take said land in payment for said Garcia land and said notes, he, the defendant, thoroughly examined the title to said land, both of record and in every other respect, and found the same to be perfect and unincumbered, as hereinbefore stated, and at the time of the making of said contract and of reducing the same to writing, declared that the same was perfect, and that he was entirely satisfied, and, fully knowing the title of said E. E. Graves to the said Graves mill and gin block, contracted and agreed to receive her title to the same as it was by her, joined by F. M. Graves, simply putting him in possession and making and delivering to him the conveyance hereinbefore described, with this exception, to wit, that it was known to the said J. E. Williams from the beginning of his negotiation in the matter that said Graves mill and gin block as hereinbefore described had been and was a part of the homestead of the said F. M. and E. E. Graves, and that the said F. M. Graves had before that time given said Graves mill and gin block, or his interest therein, to his said wife, E. E. Graves, but had not at that time made a deed to the same, and he knew at the conclusion of said contract that such state of facts still existed, and that it existed when he signed said contract, and the same was at that time discussed; and the said J. E. Williams at all of said times agreed that he did not care whether F. M. Graves made to her said deed or not; that he could do this or not, as he pleased; because that the said deed he contracted for, signed by both F. M. and E. E. Graves, would convey to him a perfect title whether F. M. Graves executed such deed to E. E. Graves or not; and that all he required of them as to title at all was for them both to sign and duly acknowledge a deed of conveyance to said premises to him, and said deed by them and placing him in possession of said premises was the only consideration he was to receive for said notes and said Garcia land.

"That the said F. M. Graves did, on the 16th day of August, 1890, make, sign, and duly acknowledge a proper and lawful deed of conveyance from himself to his wife, E. E. Graves, to his interest in said Graves mill and gin block, and the same was recorded on the 19th day

of August, 1890, in book 2, on pages 205 and 206, of the deed records of Hamilton County, Texas.

"That Joe E. Williams now owns by lawful title from the State of Texas down to himself an equal undivided one-half interest in and to said northwest one-fourth of the Marcus Garcia league, in Henderson County, Texas (it has herein before been described), and that he is now and always has been, since the 4th day of August, 1890, able in law and in fact to perform his said contract as to his interest therein, and that he could have and still perform said contract as to the other half owned by his brother, E. R. Williams, except for his wrongful and fraudulent conduct in influencing and procuring the said E. R. Williams to refuse to convey to him his interest in order that he might use the same as a pretext to avoid performing said contract with E. E. Graves.

"That the conveyance so tendered to J. E. Williams by F. M. and E. E. Graves they have repeatedly tendered since, and have at all times been ready and willing to deliver to him and in every way carry out their part of said contract, and now here in open court bring said deed of conveyance and deliver the same to the defendant, and, demanding a performance by defendant of said contract on his part as herein before set forth, they in all things in reference to said contract on their part fully submit themselves and said premises to the orders, judgments, and decrees of this court, and here now offer to accept the title of the defendant, J. E. Williams, to his undivided one-half interest in said Garcia land as performances on his part to that extent, and agree to treat his title to said half-interest as performance to that extent without the title to the other half by the said E. R. Williams.

"That said Garcia one-fourth league contains 1100 acres of land, and that in said trade defendant and E. E. Graves valued said land and agreed that the same was worth $3 per acre, and in said trade that was the agreed and fixed value of the same; and the undivided one-half interest therein of E. R. Williams, the value thereof was fixed and agreed between the parties in said trade to be the sum of $1650, and these values were at the time in said trade by both plaintiffs and defendant fixed, agreed, and contracted to be the real and actual value of said entire tract, and of the one-half interest of E. R. Williams.

"That as a matter of fact, both at the time of making said trade and also on the 13th day of August, 1890, when the defendant refused to carry out said trade, said land at each of said times was worth the sum of $3 per acre, and the undivided one-half interest therein of E. R. Williams was of the value of $3 per acre, his whole interest being at said time of the value of $1650.

"Plaintiffs pray that they have judgment against the defendant establishing by judgment of this court said entire contract between E. E. Graves and the defendant in the specific manner, tenor, and form as

said contract has been herein before set out; and that plaintiffs have judgment for the specific performance of the same, in so far as this court can decree the same; that is, if at the hearing hereof the defendant can not or will not perform said contract as to the interest of E. R. Williams in said Garcia land, that then this court decree the performance of the same as to the half-interest of the defendant by divesting out of the defendant all right, title, and interest and right of possession owned and held by him in said Garcia land, and vesting the same in E. E. Graves, and for judgment against the defendant for the sum of $1650, with interest thereon at 8 per cent per annum from the 13th day of August, 1890; and plaintiffs, now here alleging that since the bringing of this suit the first one of the $600 notes herein before described, which was to have been executed by defendant to E. E. Graves, has become due, and did become due on the 31st day of December, 1890; and by reason of all the premises and facts herein before stated, he promised and became liable to pay E. E. Graves said sum according to tenor of said note as it should have read, and although payment thereof has often been demanded of defendant, he has refused and failed to pay the same, except the sum of $120.65, which he paid on account of said note on the 13th day of August, 1890, and the balance thereof he has wholly failed and refused to pay, to plaintiffs' damage $500; and plaintiffs also ask for judgment against the defendant for the sum of $479.35, the balance due on said note, with interest thereon at 12 per cent per annum from the 13th day of August, 1890, for a judgment of this court fixing and declaring the above sum of $1650, and $479.35 as a vendor's lien upon said Graves' mill and gin block as purchase money therefor, and ordering and decreeing the foreclosure of said lien as under execution, and that the same be sold for said debt of $2129.35, being the amount of said two sums subject to plaintiffs' further lien thereon, by reason of said other $600 note of defendant that will mature on December 31, 1891, and for all costs of this suit, and for such other and further relief in law or equity as on the trial of this case the plaintiffs may show themselves entitled to, and that whatever judgment may be had by plaintiffs may be for plaintiffs for the separate use and benefit of the plaintiff E. E. Graves in her own right as her separate property."

The defendant's answer contained a general demurrer, several special exceptions, a general denial, and averments of misrepresentations by F. M. Graves, the agent of E. E. Graves, and gross inadequacy of consideration, thereby rendering the contract inequitable.

A jury trial followed, resulting in the following verdict:

"We the jury find for the plaintiffs for and as the separate property of E. E. Graves, as follows: 1. For one-half of the land described in plaintiffs' petition as the Garcia land, and designated as the Henderson County land. 2. For the value of the other half of said land on the

8th day of August, 1890, which we assess at $1650, with interest thereon at 8 per cent per annum from said date.  3.  For $600, less $120.65, with interest thereon at 12 per cent per annum from August 8, 1890.  4.  For $600, with interest thereon at 12 per cent from August 8, 1890; but we find that this amount is not to be due until December 31, 1891.  5.  We find the last two amounts are secured by a vendor's lien on the Graves mill and gin block, as that property is described in plaintiffs' petition."

The judgment follows the verdict; and, in addition thereto, it vests title to the mill and gin block in Williams, and orders the deed thereto on file in this suit delivered to him.

*Opinion.*—It is insisted by appellant that appellees' petition discloses no cause of action; that the contract sought to be enforced is not binding upon him, because the consideration therefor, as shown by appellees' petition, was the verbal promise of a married woman to convey part of her homestead, which promise was null and void; and that, as there was no mutuality of obligation, appellant can not be compelled to perform that which he promised.

It is a general rule, that to be valid a contract must be supported by a sufficient consideration.  It is also a general rule, as to mutual promises, that each operates as a consideration for the other.  There are exceptions, however, to this latter rule; and if, as to one party, the agreement be absolutely void, there is no consideration for the promise made by the other.  Story on Con., sec. 568.

It was held in Jones v. Goff, 63 Texas, 248, that a contract for the sale of the homestead, although in writing and duly signed and acknowledged by both husband and wife, was, as to the latter, void and not enforcible.  The reasons upon which that decision is based, as disclosed by the opinion, lead necessarily to the conclusion, that as the married woman's freedom to retract and decline to sell must, under the statute, remain with her until the conclusion of her privy examination to her deed, therefore, as a contract binding her to sell to a particular person for a particular consideration would destroy that freedom essential to a valid sale, she can not, in writing or otherwise, so bind herself.  Freedom to retract at the last moment being essential to a valid sale, a contract, the effect of which would bind her not to retract, would necessarily be void.

This being the case, appellant's promise, even after Mrs. Graves had verbally accepted his offer, was without consideration, because such acceptance was not binding upon her.  Tarr v. Scott, 4 Brews. (Pa.), 49; Lanier v. Ross, 1 Dev. & B. Eq., 39; Warren v. Castello, 109 Mo., 338; 32 Am. St. Rep., 669; 2 Bish. Law of Married Women, sec. 250.

We are aware that many courts, both American and English, hold that a verbal promise which, because of the statute of frauds, could

not be enforced against a plaintiff without his consent, will, when he tenders performance, constitute a sufficient consideration for a written promise signed by the defendant to sell land, or perform any other act enumerated in the statute of frauds. The courts give different reasons for this doctrine; and an eminent text writer, after criticising these various reasons, says: "It is, on the whole, best to concede that the doctrine rests upon no basis of principle; that it was arbitrarily laid down by the earlier decisions which interpreted the statute, and has been followed by the great majority of subsequent cases; and that it is useless to account for or explain it by reasons which conflict with other well-settled rules." Pom. Spec. Perf. of Con., sec. 170, p. 239.

However, the decisions construing the statute of frauds do not controvert the proposition that the defendant's promise must rest upon a consideration. They treat the plaintiff's verbal promise, though not enforceable because of the statute, as merely voidable, and not as absolutely void.

In view of the difficulty in finding a proper basis upon which to rest the doctrine referred to, and of the supposed distinction between contracts not in compliance with the statute of frauds and agreements like the one under consideration, we are not disposed to extend that doctrine to cases like the present.

However, it is urged in behalf of Mrs. Graves that this is an optional or unilateral contract; and that, such being its character, Williams can be compelled to perform.

A contract by which the owner of property agrees with another person that he shall have a right to buy the property at a fixed price within a certain time, is an option; and, if based upon a valid consideration, such contract is binding and may be enforced. Johnson v. Trippe, 33 Fed. Rep., 530; Watts v. Keller, 56 Fed. Rep., 1; Hall v. Center, 40 Cal., 65; Ide v. Leiser, 10 Mont., 5. See also note to Litz v. Goosling, 21 L. R. Ann., 127.

The two last citations contain instructive discussions of optional contracts; and they may be consulted with benefit by those interested in the subject.

An offer to sell may be withdrawn at any time before acceptance, notwithstanding the fact that a period is named during which it will remain open, unless the offer itself is based upon a consideration separate and apart from that which would, by acceptance, become the consideration for the sale. Hochester v. Baruch, 5 Daly, 440; Gordon v. Darnell, 5 Colo., 302; School Directors v. Trefethren, 10 Ill. App., 127; Routledge v. Grant, 4 Bing., 653; Estridge v. Glover, 5 Stew. & P. (Ala.), 264; 26 Am. Dec., 344; Bradford v. Foster, 87 Tenn., 4; Railway v. Bartlett, 3 Cush., 224; Ide v. Leiser, 10 Mont., 5. See also note to Litz v. Goosling, 21 L. R. Ann., 157, and authorities there cited.

If for a consideration appellant had agreed to leave his offer open for a designated period of time, or until Mrs. Graves could have his land examined, then he could not have withdrawn his proposition before the expiration of the time stipulated; and her tender of performance within that time would have rendered appellant's offer binding upon him.

But the mere statement to appellant by Mrs. Graves, or her husband, acting for her, that she accepted his proposition, did not constitute a legal acceptance, because said statement did not bind her; and until something was done by Mrs. Graves that was beneficial to appellant or disadvantageous to her, there was no consideration for his promise.

However, appellees' petition alleges that, after the verbal acceptance of appellant's offer by Mrs. Graves, he demanded, and she delivered to him, the possession of the property which by the verbal agreement she was to convey to him; that he paid her $120.65, to be credited on one of the notes which he had agreed to execute in payment of the difference between the value of the two pieces of real estate; and that, although he refuses to execute to her a deed conveying his land, he still retains possession of hers.

We think these averments make the petition good, and that the court's ruling on the exceptions thereto was correct. The averments show that Mrs. Graves agreed to deliver possession of and convey title to certain real estate to appellant, in consideration of which he was to execute certain notes and convey certain land to her; that before he withdrew his offer she partially performed her part of the agreement by delivering possession; that thereafter, and in due time, she tendered, and still tenders, performance of the remainder; and that appellant is still availing himself of the benefit of said agreement by retaining possession of the property she delivered to him. If the facts be as alleged, appellant should be compelled to perform. But this phase of the case was not submitted to the jury; and under the instructions given them, Mrs. Graves' right to a judgment was not dependent upon performance, partial or otherwise, on her part, before the offer was withdrawn; and appellant complains of the action of the court in refusing the following special charge asked by him:

"If it has not been shown to you by a preponderance of testimony in this case that the defendant went into the actual and exclusive possession of the mill and gin property described in plaintiffs' petition, you will find a verdict for the defendant."

It was error to refuse this charge. Inasmuch as Mrs. Graves' agreement to convey part of her homestead was void, and therefore could not operate as a consideration for appellant's promise, which she is now seeking to enforce, there was no legal acceptance of his offer until there was at least a partial performance by Mrs. Graves of that which she

had agreed to perform; and if he withdrew his offer before such performance, he is not bound.

Assignments of error relating to other questions are not sustainable.

For the error pointed out, the judgment is reversed and the cause remanded.

*Reversed and remanded.*

Delivered May 9, 1894.