**FINK et al. v. HOUGH et al.**

(Court of Civil Appeals of Texas. Amarillo. Jan. 25, 1913. Rehearing Denied Feb. 22, 1913.)

1. VENDOR AND PURCHASER (§ 18*)—OPTION CONTRACTS—ENFORCEMENT.

An option contract for the purchase of several tracts of land, which calls for a payment before a designated date, and which provides

that if the purchaser takes and pays for all the land before such date the vendor shall refund or deduct a specified sum per acre, and in case good title cannot be conveyed the $5,000 already paid shall be refunded to the purchaser, becomes a binding contract for all the land, where the purchaser, before that date, takes a substantial part of the land.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. § 23; Dec. Dig. § 18.*]

2. VENDOR AND PURCHASER (§ 53*)—CONTRACTS—EXECUTED CONTRACTS—TITLE.

Where a contract for the sale of real estate became enforceable by the purchaser taking a substantial part of the land, and the conditions to be complied with by the vendor were either complied with or waived, the contract became executed, and vested the title in the purchaser.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. § 84; Dec. Dig. § 53.*]

3. VENDOR AND PURCHASER (§ 334*)—RECOVERY BY PURCHASER OF DEPOSIT—GROUNDS.

A purchaser in an executed contract, who advanced a part of the price, and who refused to complete the purchase according to the contract, could not recover the money paid without showing that the vendor refused to perform.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 959–980; Dec. Dig. § 334.*]

4. VENDOR AND PURCHASER (§ 334*)—RECOVERY BY PURCHASER OF DEPOSIT—GROUNDS.

Where a vendor in an executory contract of sale of land stood ready to perform, and did nothing to justify a rescission by the purchaser, the purchaser, to recover the deposit made by him, must show that no injury resulted to the vendor by a refusal to perform, and that it would be inequitable for the vendor to retain the deposit.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 959–980; Dec. Dig. § 334.*]

Appeal from District Court, Castro County; L. S. Kinder, Judge.

Action by Frank Hough and another against Henry Fink and another. From a judgment for plaintiffs, defendants appeal. Reversed and rendered.

See, also, 141 S. W. 147.

A. S. Rollins, of Amarillo, for appellants. G. W. Barcus, of Weatherford, and Jno. C. North, of San Antonio, for appellees.

HUFF, C. J.  This suit was instituted by appellees, Frank Hough and M. J. Ramaeker, against appellants, Henry J. Fink and C. R. McAfee, for $5,000, based upon the following contract: "December 19/08. This contract, entered into this day by and between Henry J. Fink of Belleville, Illinois, party of the first part, and M. J. Ramaeker and Frank Hough of Lindsay, Nebraska, parties of the second part, witnesseth: Party of the first part hereby agrees to sell and convey unto the said parties of second part the following described land, to wit: Surveys Nos. 143, 136, 144, 145, 103, 105, N. ½ 176, S. ½ 177, N. ½ 178, S. E. ¼ 178, all in Blk. M. 6, Castro and Swisher counties, Texas, containing 8,800 acres of land, more or less, according to survey. The conditions for the transfer of said land is $15.00 bonus per acre on all school land and $16.00 per acre on patented land, to be paid as follows: $6.50 per acre cash to be paid on or before April 1, 1909, and balance by assuming $20,186.00 now against the land, due half Oct. 18/09, bearing 8% interest from Oct. 18/08, said notes to be discounted 2% annually and interest paid by first party until Dec. 15/08. The balance of the consideration to be divided into three equal annual payments bearing 6% interest from Dec. 15/08 and due, one, two and three years from Dec. 15, 1908. Said land to be deeded in section tracts except those now deeded in quarter sections. Second party hereby pay the sum of $5,000.00 for an option on above land until April 1, 1909 and same sum to apply on cash payment for the land. It is hereby understood and agreed that in the event of parties of the second part take and pay for all land, on or before April 1, 1909, that party of the second part shall have refunded $1.00 per acre on all land already sold and shall pay for land on a basis of $1.00 per acre less than price above stated to be taken from cash payment, Section 136 is not to be deeded until all land is sold. Party of the first part to provide abstracts showing good title to each of above sections and warranty deed to all land, subject to the amount due the state on school land. In case good title cannot be conveyed then the $5,000.00 already paid to be refunded to second parties. Witness our hands this 19th day of December, 1908."

It is alleged in the petition, while said contract is in the name of Henry J. Fink, by C. R. McAfee, and while the title to the land stood in the name of Henry J. Fink, that McAfee had an interest in said land, and that the contract was entered into by McAfee for himself and Fink, and that McAfee now owns an interest in and to a part of the land described in the contract, and that he received the sum of money therein mentioned. The case was tried in the court below, and judgment rendered for the appellees for $5,000, and upon an agreed statement of the cause, under the statute, is submitted in this court, which is as follows: "We, the parties to the above styled and numbered cause, whose names are signed thereto, being all the parties to this suit, hereby agree that the following is a brief statement of this case, and of the facts proven on December 19, 1908:

"First.  The plaintiffs allege that on December 19, 1908, they made and entered into a contract with the defendants, which is fully set out and described in paragraph No. 1 of plaintiffs' original petition, and allege that under the terms of the contract that they paid the $5,000, and that thereafter they accepted the title to and received deeds from the defendants for 3,840 acres of the land described in said contract, and paid therefor at the rate of $16 an acre for the patent land

and $15 per acre bonus for the school land, and that no part of the $5,000 paid under the contract was applied on the purchase price of the 3,840 acres of land which they did take and pay for. Plaintiffs claim that they are entitled to the entire $5,000 paid under said contract, and pray in the alternative that if they are not entitled to the entire $5,000 that they are entitled to the sum of $2,188.80, with interest from December 19, 1908, being the pro rata part of the $5,000 on the 3,840 acres that they did receive and pay for.

"Second. The defendants answer by a general denial, and allege that the plaintiffs, before April 1, 1908, had determined that they would not accept title to or purchase any of the land, except the 3,840 acres shown to have been accepted by them. Defendants also allege in their answer that the $5,000 was paid for an option on the 13¾ sections of land, and that the plaintiffs, having failed to comply with the terms of the option contract, are not entitled to recover the $5,000, or any part thereof. Defendants further allege that if said contract was a contract of purchase that time is not of the essence of said contract, and the breach, if any, is not chargeable to the defendants; and that the defendants are still ready, able, and willing to perform said contract, and tender the performance of same.

"Third. The following facts are proven: It is agreed that the contract as set out in paragraph 1 of plaintiff's petition, was executed, and that the plaintiffs paid the $5,000 as set out therein, and that thereafter, before the 1st day of April, 1908, the plaintiffs accepted the title to and received deeds from the defendants for 3,840 acres of land described in the contract and paid therefor $16 an acre for the patent land and $15 per acre bonus for the school land, and that no part of the $5,000 paid at the time of signing said contract was applied on the purchase price of the 3,840 acres of land. It is further agreed that prior to April 1, 1909, the plaintiffs had decided that they would not take any more than 3,840 acres of land described in said contract; but this understanding was not known to the defendants until after April 1, 1909, and the decision of the plaintiffs not to take said land was not based upon or controlled in any way by the condition of the title to said land.

"Fourth. The following issues of law are involved in this case: (1) The construction of the contract sued on. (2) To whom does the $5,000 paid by plaintiffs to defendants under the terms of said contract belong? And, if any part thereof belongs to the plaintiffs, what part? That is, are the plaintiffs entitled to recover a pro rata part of the $5,000 for the 3,840 acres taken, or are they entitled to recover all of it, or are the defendants entitled to retain all of said $5,000? (3) If the contract should be construed as being a contract of purchase, are the defendants entitled to a decree for specific performance of same?

"Fifth. We agree that this case, upon appeal, may be decided upon this agreed statement, in accordance with the provisions of the statute, and determined accordingly. This the 7th day of May, A. D., 1912."

This case was appealed from a former judgment in favor of the appellants herein, and reversed by the Court of Civil Appeals for the Fourth district, and is to be found reported in 141 S. W. 147. The issue upon which the case was by that court reversed is not presented on this appeal.

[1-3] We are of the opinion, when appellees, under the contract, took six sections of the land before April 1, 1909, by such action they should be held to have agreed to take all the land. The contract thereby became an entire contract, which could be enforced by either party, subject only to the condition of furnishing abstracts to the remaining portion, showing good title. Williams v. Graves, 7 Tex. Civ. App. 356, 26 S. W. 334. After the payment of the $5,000 by appellees to appellants, the owners of the land, they (appellants) could not sell the land to any other person before April 1, 1909, for the reason that they had received $5,000 from appellees for the preference right to purchase or take the land before that date. When appellees came in, under the contract, before the time limit and took 3,840 acres of land, they evidenced their purpose to purchase all the land. They had agreed to take all. Under the contract it was stipulated that if all was taken before April 1st they should get it for $1 less per acre. If they did not so take it, then they should pay the full contract price is fairly inferable. In the opinion of the writer, if appellees, before April 1st, decided to accept the land, then time was not, by the terms of the contract, the essence thereof. The contract was mutually binding upon both parties, which either could enforce as to all the land. Naylor v. Parker, 139 S. W. 93; Moss & Raley v. Wren, 102 Tex. 567, 113 S. W. 739, 120 S. W. 847. The difficulty we find in this case, under the agreed statement, is in determining whether the contract is to be treated as an executed or executory contract for the sale and purchase of the land after appellees accepted the land under the contract. If there was no condition to be complied with after such acceptance, or if the conditions named in the contract were waived, then the contract was executed, and vested in appellees the title. The agreed statement is: "The decision of the plaintiffs [appellees] not to take said land was not based upon or controlled in any way by the condition of the title to said land." If it is meant thereby that appellants had complied with the requirements as to the abstract and title, or that appellees waived a compliance therewith, the title vested in appellees under the contract. The money, un-

der the contract, was part of the purchase price for the land, and under a long line of decisions cannot be recovered by appellees. In the case of Estes v. Browning, 11 Tex. 237, 60 Am. Dec. 238, it is said: "A party who has advanced money or done any act in part performance of the agreement, and then stops and refuses to proceed and fulfill his stipulations according to the contract, has never been suffered to recover for what has been thus advanced or done; and it would be an alarming doctrine that parties might violate their contract because they chose to do so, and make their own infraction the basis of an action for money had and received." Also to same effect are the cases of Pell v. Chandos, 27 S. W. 48; Banks v. McQuatters, 57 S. W. 334; Lipscomb v. Fuqua, 55 Tex. Civ. App. 535, 121 S. W. 193. Under such condition, if there was nothing to be done but the payment of the money, execute the notes in accordance with the terms of the contract, and the delivery of the deeds, then at least, in order for appellees to show that they had a cause of action, they should show that appellants refused to carry out the contract or make the deeds. In this case it appears appellees flatly refused to proceed further with the contract, and themselves breached it, and upon such breach contend they should have the purchase money so advanced on the land.

[4] If the contract is executory, which it clearly is, in so far as the payment of the money, execution of the notes, and delivery of the deeds, as set out in the contract, it would be necessary for appellees to show that appellants were in some way in default, or that it would be inequitable for appellants to retain the purchase money. In Lipscomb v. Fuqua, 103 Tex. 585, 131 S. W. 1061, Judge Brown, speaking for the court, said: "Whether the vendors, who rescind an executory contract for the sale of land, shall return the purchase money paid depends upon the equities of each case. If it would be inequitable for such rescission to occur without restoration of money paid, then it must be restored." This is not a case of rescission by the vendor, but, so far as it is shown by the record, the vendors herein stand ready and willing to complete the contract. It is the vendees, the appellees, who refuse to carry out the contract and to take the land. There is no allegation in the petition that it is in any way inequitable for the appellants to retain the money, or any proof that it will be so. There appears to be no reason shown why appellees should rescind the contract, save and except for their own purposes they wish to be relieved from their contract. No act of appellant is shown which justifies such rescission on the part of appellees. They, by their own wrongful act, breach the contract and make that the basis of their right to recover the money. It is urged that the Court of Civil Appeals for the Fourth district, on a former appeal,

held that the sum advanced was only a penalty, and not liquidated or ascertained damages, and for that reason appellees should recover, unless appellants allege and show that they were actually damaged by appellees' failure to take the land. The case before that court was different from the one presented in this court, and the case was there reversed upon a ground not presented on this appeal. It is not necessary for us, as we understand this case, to discuss the question as to whether the sum placed with appellants should be treated as a penalty or ascertained damages. This is not a suit by appellants for damages for breach of a contract. If it were, it might be necessary for us to determine whether such sum represented a penalty or not. In construing contracts of this nature and character, with reference to deposits or earnest money, as to whether the same shall be treated as a penalty or not, the authorities are numerous, and each case rests largely upon the contracts or facts under consideration. The question here is: Who has the right to the money paid to appellants under the contract, to be applied on the purchase price for the land? It was said on the former appeal by the court passing on the case: "In either case the $5,000 can only be treated as a deposit, placed as a penalty with the seller to guarantee the damages." Whether that court's conclusion was correct or not as to the same being a penalty, it is quite certain that the amount was rightfully deposited with appellants; that they had the right to hold it to guarantee them from loss by reason of appellees' breach of the contract. It is not alleged or proven that appellants lost the right to such deposit by any wrongful act on their part; but, on the contrary, it appears they were living up to the contract, offering to carry it out to the letter, and there is nothing shown that they had by any act or word of theirs wrongfully induced appellees to put up the money for such guaranty. It is agreed in this case, prior to April 1, 1909, appellees had decided that they would not take any more than 3,840 acres of the land, and this was not known to appellants until after April 1, 1909. In every breach of a contract the law presumes there is some damage, at least nominal. Appellees set up and admit their wrongful breach, and on that ground alone ask for a judgment restoring to them the money deposited by them to guarantee appellants against damage which might be occasioned by such a breach. It is not alleged or proven that such breach did not damage appellants. They ask for the return of the money in the face of a guaranty deposit and the presumption of the law that damage did result from such breach. The burden, we think, in this case was on appellees to allege and prove that no injury resulted to appellants by the wrongful acts of appellees, and that it would be inequitable for the appellants to retain the money. This burden they

have not discharged. The contract entered into between the parties was an entire contract, and the payment of the money to appellants was part of the contract, the stipulations of which were mutually dependent. If appellees had gone forward with their contract, they would have received the benefit of that sum as a payment upon the land, and no loss would have occurred to them. They stopped before a completion and demanded its return, regardless of the injury they inflicted upon appellants or the benefits they may have derived under the contract. We do not believe the law will sanction a man setting up his own wrong or breach of a contract as a ground for recovery. Under the agreed facts, we do not think appellees entitled to a judgment for the $5,000.

This case has been appealed once before, and reversed and remanded. If appellees could have shown that no injury resulted to appellants by a refusal on their part to carry out the contract, and that the retention of the money by appellants is unjust and inequitable, they have had sufficient opportunity, after such reversal, to allege and show such facts. The parties hereto also request that we decide the questions submitted. We therefore conclude nothing is to be gained by reversing and remanding the cause. It is therefore ordered that the case be reversed and rendered, and that the judgment of the trial court for appellees herein be set aside, and that judgment be here rendered that appellees take nothing by their suit, and that the appellants recover their costs in this court and the court below.

The case is reversed and rendered; and it is so ordered.