## NORWOOD v. ADAMS.

### No. 3840.

Court of Civil Appeals of Texas. Amarillo.

June 8, 1932.

Vickers & Campbell, of Lubbock, for appellant.

Lockhart & Brown and Tom Garrard, all of Lubbock, for appellee.

HALL, C. J.

The appellee, Adams, owned a section and a half of land in Lubbock county upon which there was a mortgage to secure a loan of approximately $20,000. As a result of negotiations with E. P. Norwood, there was an oral agreement that the latter should purchase a half section of the land and in doing so he would assume $7,040 of the total encumbrance. On October 25, 1930, Adams, joined by his wife, and Norwood signed an instrument in writing. The recitations therein necessary to a disposition of the issues presented here are as follows:

"This contract entered into by and between W. R. Adams and wife Mary Stacy Adams, parties of the first part, and E. P. Norwood, party of the second part, witnesseth:

"That said first parties have this day sold and agreed to convey to second party by a good and sufficient warranty deed the west half of Section 19, Block E, Lubbock County, Texas, for a consideration of $10,560.00, to be paid by second party as follows: $7,040.-00 to be paid by second party assuming that amount of a loan in favor of the Amicable Life Insurance Company of Waco, Texas, * * * and the balance of $3,520.00 to be paid when this deal is closed."

There is then a stipulation binding Adams and wife to furnish a complete abstract of title showing a sufficient title to be approved by Norwood's attorney. This is followed by further stipulations with reference to taxes and the payment of accrued interest, the delivery of possession as against a tenant then occupying the land, and the writing proceeds as follows: "The above lands, together with other lands, are now under loan with the said Amicable Life Insurance Company to the amount of $20,000.00, due January 1, 1939, and the said first parties do hereby appoint and obligate themselves, their heirs or assigns, to get said loan divided in such manner that the said west half of Section 19, Block E, aforesaid, will only be liable for the amount of said loan hereby assumed by second party which said subdivision shall be done at the expense of first parties. Said division of said loan shall be done by written instrument, segregating said loan or by the execution of new loan papers in either event the above lands shall only be liable and carry the amount herein assumed by second party and no more and said loan shall

bear not more than 7 per cent per annum interest and in the event said loan cannot be segregated and divided as above mentioned, then this contract shall become null and void and of no further force or effect but second party does bind himself to consummate this contract and close deal when said segregation has been completed or ready to be segregated in a manner suggested and required by said Life Insurance Company and in whatever manner same is segregated it shall be done at the expense of the first parties, their heirs or assigns, and this contract is made subject to said segregation. The second party places with a copy of this contract a time deposit certificate for the sum of $1,000.00 as a forfeit guaranteeing his full performance of this contract when and at the time that title is delivered to him in the manner and form above mentioned and in the event that he shall fail or refuse to consummate this deal after the first party shall have done and performed every act and thing required of them in this contract, then said forfeit money shall be paid to said first parties as liquidated damages."

There is a further stipulation that the deal shall be closed within fifteen days from the date of its execution.

When the parties went to the office of C. L. Adams, who prepared the contract with the terms as above stated, Mrs. Adams refused to execute it until this stipulation was added thereto: "The segregation referred to in this contract shall be done at the option of the first parties, but in the event that they do not make such segregation, then the second party shall be relieved from all obligation by virtue of this contract and the terms of this contract shall become null and void as above stated."

A jury was impaneled, but when both sides closed in the introduction of testimony, the court peremptorily instructed the jury to return a verdict for appellee, which was done, and judgment was entered in favor of appellee against Norwood for the sum of $1,000; hence this appeal.

The appellee, Adams, as plaintiff, set out the terms of the contract and alleged that he had sustained damages in the sum of $2,500 because of the failure of Norwood to consummate the deal and in the alternative sued for $1,000 liquidated damages. He further alleged that he was in position to perform and carry out each and every term and condition imposed on him in said contract and would have performed and carried out all of the terms and conditions of said contract, but that shortly after said contract was executed and delivered the defendant repudiated said contract and refused to perform and carry out same and so notified plaintiff of his intention not to perform his part of said contract, and by reason of the

fact that the defendant repudiated said contract and refused to be bound by same or to make any effort to carry out the terms of said contract, this plaintiff did not do and perform the things as provided for in said contract to be performed and done by him.

Norwood answered that because of the last stipulation (quoted above in full) added to the original writing by plaintiff and his wife, they were not obligated to perform said contract; that it was not mutual and was unilateral and in favor of plaintiff. That on account of a disagreement between him and the plaintiffs within a few hours after the alleged contract was executed and before plaintiffs had done anything with respect thereto, he notified them that for valid reasons he would not be bound by it. That this was before they had made any effort to segregate the half section from the main tract of land or before they knew whether it could be done and before they had notified him that they would go ahead and segregate the lien on the land he was to purchase. He then sets up the fact that Adams and wife had previously executed a mineral lease or royalty deed covering the lands conveying said rights to their daughter and had requested the abstractor, C. L. Adams, to leave said lease out of the abstract of title which they were to furnish. That Adams and wife failed and refused to go with him to the bank to deposit the $1,000 with a copy of the contract. That as soon as he learned of the transfer of the mineral rights, within a few hours, he notified Adams and wife that he would have nothing more to do with the matter. That Adams and wife had made no effort to have the half section of land segregated or the loan apportioned in accordance with their agreement, nor had they ever tendered him an abstract of title made in compliance with the terms of the contract.

The word "option," as contained in the clause of the contract added at the suggestion of Mrs. Adams, means: "The right, power, or liberty of choosing; discretion; the exercise of such right, power or liberty; liberty to elect between alternatives; election; choice; preference." Standard Dictionary.

■■ The writing before us and upon which this action is founded is not an option contract, neither is it a unilateral contract, as it seems to have been construed by the parties. According to our construction it is not a contract of any description. Without the last clause, inserted by request of Mrs. Adams, it would have imposed obligations upon both parties not necessary to be discussed, but by the addition of the last-quoted stipulation, the instrument was stripped of every element of a binding contract. It abrogated every obligation theretofore imposed, and in its final analysis the writing is now nothing more than a conditional offer by Norwood to

buy the half section of land. The condition precedent as expressed in the body of the instrument is that Adams and wife will have the half section relieved of the incumbrances against it in favor of the loan company, and the express stipulation is that in the event said loan cannot be segregated and divided, then the contract shall become null and void and of no further force or effect. As first presented to the parties and before the addition of the stipulation referred to, the segregation of the land, and the corresponding readjustment of the lien as it existed in favor of the loan company, was a condition precedent, the nonperformance of which released Norwood of any and all obligations, prospective or otherwise. It may be conceded that as originally prepared the instrument imposed the duty upon Adams and wife to use their best efforts to have the half section segregated from the body of the entire tract and the indebtedness and lien adjusted accordingly; but when they added with reference to the segregation that it should be done at their option or discretion, they were under no obligation, and no duty rested upon them until they at least decided to have the land segregated. That they were at liberty to refuse to do so is manifested by the further language of the added clause which provides that in the event they do not make such segregation, then Norwood shall be relieved of all obligation and that the contract shall become null and void. As a matter of law no obligation rested upon him until they accepted his proposition and notified him in writing of such acceptance. The added clause conflicts with the first statement that the first parties have sold the property to Norwood. In its original form the writing bound Norwood to consummate the contract and close the deal when the segregation had been completed or was ready to be completed according to the requirements imposed by the loan company. It also bound Norwood to deposit $1,000 with the contract as a forfeit, guaranteeing his full performance when title was delivered to him. The stipulation with reference to the $1,000 was completely abrogated by the added clause. It was effective only in the event Adams and wife were bound to convey in accordance with the terms of the original instrument. According to our interpretation of the writing as supplemented at Mrs. Adams' request, Norwood proposes to Adams and wife that if they will have the half section of land segregated and relieved of all indebtedness except $7,040, furnish him an abstract showing a good and sufficient title, oust the tenant at their own expense, and, upon approval of the title, tender a good and sufficient warranty deed reciting a consideration of $10,560, $7,040 of which he is to assume, that he will accept the deed and pay $3,520 cash, provided the deal can be closed within fifteen days from the date of the contract. He further proposes to deposit $1,000 as a forfeit in the event he should fail or refuse to consummate the deal after Adams and wife have done and performed all the obligations imposed upon them.

There is nothing in the writing, although signed by all three of the parties, which imposes any obligation upon Adams and wife. The first covenant required them to have the land segregated and the indebtedness adjusted accordingly, but as to this obligation they were protected by the further provision that in the event the segregation could not be effected, then the contract should become null and void.

There could be no sale until segregation. There could be no segregation until the Adams assented, nor could there be a contract until their assent had been communicated in writing to Norwood. Nor was he bound to deposit $1,000 until there was a contract to be deposited with it. The testimony shows that Mrs. Adams was not willing to sign the contract which bound her in any degree to attempt the segregation, so before signing it she required the addition of the last clause, rendering it a matter of choice or discretion with the vendors as to segregation. So the minds of the parties never met. This record fails to show that there has been a written acceptance of Norwood's proposition to purchase. It is settled law in Texas that a written proposition to buy or sell land must be accepted in writing by the opposite party in order to be binding. Foster v. New York & Texas Land Co., 2 Tex. Civ. App. 505, 22 S. W. 260; Patton v. Rucker, 29 Tex. 402; Petty v. Wilkins (Tex. Civ. App.) 190 S. W. 531.

█ Under the fundamental rules governing the formation of a contract an offer may be withdrawn at any time before it is accepted, unless it is supported by an independent consideration. Williams v. Graves, 7 Tex. Civ. App. 356, 26 S. W. 334; Houghtling v. Eubank (Tex. Civ. App.) 186 S. W. 364; Washington v. Rosario M. & M. Co., 28 Tex. Civ. App. 430, 67 S. W. 459; 10 Tex. Jur. 33, § 15. There is no consideration for Norwood's offer. Our conclusion that the negotiations between the parties, evidenced by the writing as amended and signed by the parties, never resulted in the formation of a contract, is amply supported by the authorities in this state, as well as by elementary writers.

█ The following authorities simply announce the elementary rules with relation to the formation of a contract that an acceptance of an offer or proposal is necessary; that an intention to accept must be expressed; that an offer may be withdrawn or revoked at any time before acceptance when not supported by a consideration; that assent to a proposal is necessary, without which there can be no contract; that there is no

mutuality sufficient to constitute a contract until the minds of the parties meet with respect to the subject-matter of the agreement and all its essential terms; and that an acceptance by the offeree must be communicated to the offerer, and in case of an offer to buy or sell land, the acceptance must be in writing. These essentials are lacking in the instant case. Foster v. New York & Texas Land Co., supra; Williams v. Graves, supra; Whitaker v. Zeihme (Tex. Civ. App.) 61 S. W. 499; Lucas v. Patton, 49 Tex. Civ. App. 62, 107 S. W. 1143; Parker v. Naylor (Tex. Civ. App.) 151 S. W. 1096, 1097; Brillhart v. Beever (Tex. Civ. App.) 198 S. W. 973; 10 Tex. Jur. "Contracts" §§ 12, 13, 14, and 24; 13 C. J. 272, § 68; 293, § 102; 6 R. C. L. 606; 1 Williston on Contracts, §§ 64, 66; 1 Page on Contracts, §§ 74, 150, 152, 153, and 178.

For the reasons stated, the judgment is reversed, and the cause remanded.