A. WHITTAKER & CO. v. CHRISTOPHER HUESKE.

It was decided in Brantley v. Thomas, 22 Tex., 270, that in every sale of goods by sample there is an implied warranty that the goods delivered shall correspond with the sample.

This liability exists whether the vendor knew that the samples were superior to the bulk or not.

Where bales of cotton were sold by sample, it matters not that the sample was made by the warehouseman, especially when the vendor received the sample from the warehouseman and carried it to the vendee.

APPEAL from Washington. The case was tried before Hon. ROBERT E. B. BAYLOR, one of the district judges.

This suit was instituted in the court below by Whittaker & Co. against Hueske, upon an alleged breach of an

implied warranty in the sale of ten bales of cotton.   It
appears, from the facts proved upon the trial, that the crop
of cotton raised by appellee, in the year 1859, say some ten
or eleven bales, was hauled to the gin-house of a neighbor,
(Mr. Randle,) for the purpose of being ginned and packed;
that all but one load of the seed-cotton thus hauled was
of excellent quality; that this load, which was the last one
hauled, was of an inferior grade, was thrown on the top of
the pile formed by the rest of the cotton, and became mixed
with it in the ginning; that the cotton was ginned and
packed at Randle's gin-house, and by Randle's employees,
and appellee had nothing to do with the ginning and pack-
ing, though he was aware that the inferior cotton was in-
termixed with the better grade in the ginning.   Ten of
these bales were taken to Houston by appellee, and depos-
ited in the warehouse of Allen & Fulton.   That a sample
of it was taken by the warehouseman, and by Hueske ex-
hibited to the appellants, who offered him ten and a quarter
cents per pound for it, payable partly in money and partly
in groceries.   This offer was accepted.   A portion of the
amount agreed upon was paid in cash, and the balance in
flour, sugar, &c., some of which articles proved to be of
inferior quality, and slightly deficient in weight upon being
examined and weighed by appellee after returning to his
home in Washington county.   It was proved on the trial
that the sample exhibited by appellee to appellants, as
above stated, showed the cotton to be of that grade known
among merchants as "strict middling;" that ten and a
quarter cents was the price paid for it; and that it was
immediately shipped to the house of Miller, Montgomery &
Co., at Galveston, to be sold on account of appellants; that
they sold it for ten and a half cents per pound, to Muller &
English, who, upon examination, found it to be what is
known as "mixed-packed," which is a term used by mer-
chants to designate a class of cotton formed of different
grades, thrown in promiscuously, and packed together.

The sale to Miller, Montgomery, & Co. was made by samples taken from each bale, and upon re-packing the cotton at the steam-press it was found that the grade of the cotton did not come up to the samples. It was immediately returned to Miller, Montgomery, & Co., and upon another sale of it they were able to get only nine cents per pound for it, thus causing a loss to apppellants of about $100. It was also proved, that the fact that cotton is mixed packed does not prove an intention to commit a fraud on the part of the planter, and that a sample of such cotton taken from the edge of the bale may or may not show its true character; that it is customary for the warehouseman, or the cotton-press employees, to make the samples by which cotton is sold, and the buyer makes his own classification; and that mixed packed cotton is always classed much lower, in consequence of different grades being found in the same bale. There were some other facts proved on the trial; but the foregoing are all that are material so far as the present opinion is concerned.

A number of instructions were asked by the plaintiff, all of which were given by the court. It is unnecessary to state all of these in full. So far as material to the present decision, they amount to about this: that in every sale by sample there is an implied warranty that the bulk of the articles shall correspond with the sample; that if the bulk was of a lower grade than the sample, the seller would be liable for any damage sustained in consequence of such inferiority, though ignorant of this fact and innocent of fraud. At the instance of defendant the court gave, among others, the following charge: "If the jury believe from the evidence that the cotton was sold by sample made by the warehouseman at Houston, and both buyer and seller relied solely on the sample, as made by a party indifferent between them, and there were no false or fraudulent representations on the part of the seller, the plaintiffs cannot recover in this action."

The jury found a verdict for the defendant.  The plaintiffs below moved for a new trial, which was overruled, and they have brought the case by appeal to this court, assigning for error, that the court gave the above and other instructions asked by defendant to the jury, and overruled plaintiffs' motion for a new trial.

*Sayles & Bassetts*, for appellant.

*Shepard & Kerby*, for appellee, argued the case voluminously upon the facts, and cited Brantley v. Thomas, 22 Tex., 270, as containing the controlling legal principle.

WILLIE, J.—It was decided by this court, in the case of Brantley v. Thomas, 22 Tex., 270, that in every sale of goods by sample there is an implied warranty that the goods delivered shall correspond with the sample.  In accordance with this decision was the charge of the court below, as given at the request of the plaintiffs.  But the second instruction, given at the instance of the defendant, so qualified the law as to hold, that if the sample was made by a warehouseman, who was indifferent between the parties, and both buyer and seller relied solely upon this sample, and there were no false or fraudulent representations on the part of the seller, the latter would not be liable.

We are unable to perceive upon what principle this distinction drawn by the court is based.  If the liability of a seller by sample arises upon an implied warranty, he·is answerable to the injured buyer, whether he knew that his warranty was false, and that the goods sold would not come up to his representations, or whether he was innocent of all knowledge of their defects.  No proof of fraudulent representations on the part of the seller is necessary to render him liable, where there is either an express or an implied warranty.  Nor can we see how the fact that the sample was made by a warehouseman, instead of by the

defendant himself, and that both parties relied upon that sample in making the trade, relieves the defendant from liability, especially under the circumstances of the present case. It is fully proved that it was customary for warehousemen to make samples by which to sell cotton consigned to their keeping. It is also proved that the defendant stored the cotton with the warehousemen who made the sample in the present case, and that he ratified and adopted the sample made, by receiving it from the warehousemen, and exhibiting it to the plaintiffs as a correct indication of the quality of the cotton which he proposed to sell them. These facts were sufficient to render the warehousemen agents of the defendant in making the sample, and to make him liable for their acts in the premises. He was responsible for the quality of any cotton sold in this manner, no matter who originally took the sample from the bales in which the cotton was contained, and it was not the business of the purchaser to go and take another sample therefrom, in order to see whether the first one was fairly made. If such were not the case, and the purchaser were bound, in every instance, to go and make a sample for himself, there would be but little practical use for the doctrine of implied warranty before stated. And where it was customary for the seller's warehouseman to make the sample, and such custom was known to both parties, the vendor could never be made responsible upon any sale of this character.

We think there was error in the second instruction, given at the instance of the defendant, which may have influenced the jury in rendering their verdict, and for this error the judgment is reversed, and the cause

REMANDED.