## W. J. Hume & Co. v. Sherman Oil and Cotton Company.

### Decided November 9, 1901.

**1.—Sale by Sample—Implied Warranty.**

In a sale by sample there is an implied warranty that the bulk corresponds to the sample in nature and quality.

**2.—Same—Notifying Seller.**

Where goods are bought under an executory contract and they do not comply with the warranty, the buyer must, on receiving them, notify the seller of that fact at once, or if the goods can not be immediately examined, then within a reasonable time.

**3.—Same—Pleading.**

Where plaintiff's petition charged that within a reasonable time after the arrival of the goods he examined them and found that they did not comply with the warranty, and notified defendant that because of that fact they would not be received, the pleading was sufficient as against a general demurrer.

**4.—Same—Buyer's Liability.**

Where goods are purchased under an executory contract, and the buyer declined to accept them because they do not comply with the warranty and so notifies the seller, who fails to give any directions as to their disposition, so that the buyer is compelled to keep them, he will be liable only for the actual value of the goods.

ppeal from Grayson. Tried below before Hon. Rice Maxey.

*Wolfe, Hare & Semple,* for appellants.

*Head & Dillard,* for appellee.

BOOKHOUT, Associate Justice.—Appellants filed this suit against appellee seeking to recover damages for an alleged breach of warranty arising out of a sale of 450 bales of linters. Appellee's general demurrer was sustained by the trial court, and appellants declining to amend, the case was dismissed; hence this appeal.

The allegations of appellants' petition were substantially as follows: Appellants reside in New Orleans, La., and are there engaged in business as brokers in cotton and meal products. Appellee is engaged in the business of manufacturing cottonseed oil and other products of cotton seed at Sherman, in this State. In October, 1897, and in November of the same year appellants purchased from appellee 500 bales of linters by two written contracts. The first was in words and figures as follows:

"Dic. W. A. L.                    "NEW ORLEANS, October 28, 1897.
"Sherman Oil and Cotton Co., Sherman, Texas:

"Gentlemen.—Please note and confirm, that we have this day sold to Mr. W. J. Hume & Co., for your account, 250 bales of linters, average equal sample, at the price of 2 3-4 cents per pound, cost and freight New Orleans, compressed. Prompt shipment. Seller paying brokerage.

"Terms, sight draft with bills of lading attached.

"Yours very truly,
"LAWLER & CHAERY.

"Accepted:  W. J. Hume & Co."

The second of these contracts was as follows:

"Dic. W. A. L.                    "NEW ORLEANS, Nov. 4, 1897.
"Sherman Oil and Cotton Co., Sherman, Texas:

"Gentlemen.—Please note and confirm, that we have this day sold for your account to Mr. W. J. Hume & Co., 250 bales of linters average equal sample that we now hold at the price of 2 3-4 cents per pound, delivered to New Orleans, compressed. Shipment in lots 50 bales.

"Terms, sight draft with bills of lading attached. Seller paying brokerage.

"Yours very truly,
"LAWLER & CHAERY.

"Accepted:  Wm. J. Hume & Co."

At the time of making these contracts appellee's brokers in New Orleans exhibited to appellants certain samples, and it was agreed and contracted that the linters purchased by appellants should be of a grade and quality equal to said samples. Appellee agreed to deliver the linters to the appellants in the city of New Orleans, and appellants were to pay sight draft to appellee with bills of lading attached. Afterwards appellee delivered part of said linters, and drew its sight draft on appellants for the contract price thereof. According to the usage and custom of trade in New Orleans appellee ought to have sent by mail, express, or other rapid conveyance, samples of each shipment as they were shipped, and this custom was known to appellee. Appellee, however, failed to do this, but drew its sight draft on appellants without having first sent samples of shipments. Appellants at first declined to pay the draft, but upon the assurance and guarantee of appellee's brokers, and the further assurance by wire that it would "guarantee the shipment to average equal samples," and upon appellee's request to pay the draft, appellants paid the same before the samples of cotton arrived in New Orleans, and before they had an opportunity to inspect it. Appellee continued to ship the linters which appellants bought, but failed to send samples. Appellee delivered 450 bales of the 500 purchased.

The linters delivered by appellee were of inferior quality, were stained and colored, full of trash, dirt and cottonseed hulls, and were not nearly

equal in value or quality to the samples exhibited to appellants, and upon which they were sold, were inferior to such samples, and of greatly less value. Appellants had contracted to resell said linters, and appellee had notice to this effect at the time it sold same, and knew that appellants were buying said linters to fill a contract to resell same at a greater price than appellants had paid therefor. The price appellants agreed to pay appellee was 2 3-4 cents per pound and the price at which they had contracted to resell same was 3 cents per pound. By reason of this breach of warranty appellants suffered damages in loss of profits amounting to $613.07. They were also compelled to store the linters for several months at a cost to them of $25. The linters delivered were of the value in New Orleans of 2 3-8 cents per pound, and appellants were damaged in the sum of $919.63 by reason of this deficiency in value. This made appellants' total loss about $1800.

In another count the same facts connected with the making of the contract for the purchase of said linters are alleged, and it is further alleged that if said linters had been up to warranty they would have been worth in New Orleans 3 cents per pound, while those actually delivered were worth ony 2 3-8 cents per pound. On this breach of the case appellants' damages were laid in the sum of $1532.70, this being the difference between the value of the same quantity of linters at 3 cents per pound and the actual value of the linters delivered at 2 3-8 cents per pound. Appellants paid, all told, for said linters the sum of $6743.83. After notifying appellee and making demand on it to make good the difference in the value of said linters, appellants sold same for the account of appellee for 2 3-8 cents per pound, which was the best price obtainable. This sale was made by appellants after they had received and examined the samples of the 450 bales, and after they had discovered that said samples did not equal the samples by which said linters were sold, and did not in any respect comply with said contract of which defendant was duly notified.

*Opinion.*—1. The allegations contained in the petition evidence an executory sale of goods by sample. In a sale by sample there is a warranty implied that the bulk corresponds to the sample in nature and quality. Story on Sales, sec. 376; 2 Schouler on Per. Prop., secs. 359, 360.

In addition to the implied warranty it is charged in the petition that before the purchaser would pay the draft drawn by defendant on plaintiff for the purchase price of the linters, and as an inducement for such payment, defendants by wire expressly guaranteed that the shipment should "average equal samples." This was an express warranty that the bulk of the linters in the average should equal in quality the samples. It was upon this guaranty that payment of the purchase price was made. Upon the receipt of the linters by the purchasers, the contract being executory, if they did not correspond to the warranty it was their duty to at once notify the vendors of this fact. If circumstances

were such that an immediate examination of the bulk could not be made, then a reasonable time would be allowed for such examination to be made. What is a reasonable time is a question of fact.

The petition alleges "that said 450 bales of linters did not in any respect comply with said contract, of which fact defendant was duly notified by plaintiffs." Again it charges, "that after duly notifying defendant and making demand on it to make good the difference in the value of said linters, plaintiffs, after due notice to defendant, sold said 450 bales for the account of defendant for the best price obtainable, and after using all due caution and proper diligence," etc. The allegations are general. But the demurrer was general, and in such case every reasonable intendment and meaning favorable to the pleading will be indulged. Townes' Pleading, 257. The petition, when fairly construed, shows that the plaintiff, within a reasonable time after the arrival of the bulk of the linters, examined the same and ascertained that they did not comply with the warranty, and thereupon notified the defendant that they did not correspond with the samples, and hence would not be received on the contract. If the linters did not comply with the warranty, and for this reason Hume & Co. refused to receive them as a compliance with the contract and gave notice of this fact to the oil and cotton company, and said company failed to give directions as to their disposition, and, as a result, Hume & Co. were compelled to keep the linters, then they would only be liable for the actual value of the same. This generally is the measure of liability. Story, Sales, sec. 408.

We conclude that the petition was sufficient when tested by a general demurrer, and that the court erred in sustained the same. In support of the above views, see also Brantley v. Thomas, 22 Texas, 271; Whittaker v. Hueska, 29 Texas, 355, and Boehringer v. Medicine Co., 9 Texas Civ. App., 284.

It follows that the judgment must be reversed and the cause remanded.

*Reversed and remanded.*