ADAMS v. CRITTENDEN et al.   (No. 8506.)

(Court of Civil Appeals of Texas. Ft. Worth. Jan. 20, 1917.)

1. SALES ☞355(1)—EVIDENCE—PLEADINGS.

In an action on a note given for the price of a stallion, where the guaranty accepted by defendants from the sellers limited their remedy to a return and exchange of the horse by a fixed date, and there was an utter absence of pleading by defendants to support a defense of waiver of return, testimony of a defendant tending to show waiver was inadmissible.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 1025, 1027–1035; Dec. Dig. ☞355(1).]

2. SALES ☞426—SPECIAL GUARANTY LIMITING REMEDY—EFFECT.

Where the buyers, by accepting the sellers' contract of guaranty, limited their remedy for breach to a return and exchange of the horse by a fixed date, a plea that the horse had proved worthless would avail them nothing, when sued on their note, unless they complied with the contract, or were prevented from complying by the sellers.

[Ed. Note.—For other cases, see Sales, Cent. Dig. § 1209; Dec. Dig. ☞426.]

Appeal from Tarrant County Court; Chas. T. Prewett, Judge.

Action by Grace D. Adams against W. R. Crittenden and others. From a judgment for defendants, plaintiff appeals. Judgment reversed, and cause remanded for new trial.

Wm. J. Berne, of Ft. Worth, for appellant. Wynne & Wynne, of Wills Point, for appellees.

BUCK, J. Grace D. Adams sued appellees on a note in the principal sum of $400, dated December 20, 1909, alleging that de-

fendants had executed a note in favor of Oltmanns Bros., and that they later had transferred said note in blank, before maturity, for value, and without notice, to plaintiff.

Defendants denied that plaintiff was an innocent purchaser, for value, without notice, and the jury found in favor of this defensive pleading, and the appellant has not attacked this finding, and in the oral argument her attorney conceded that appellant was not in the position of an innocent purchaser. Hence we will discuss the issues presented in the light of such concession.

The cause was submitted to the jury on special issues, and the jury found: (1) That the plaintiff did not purchase the note in controversy for a valuable consideration; (2) that the note was purchased after maturity; (3) that defendants, prior to March 1, 1912, offered to return the horse for which the note in question was given in part. Upon this verdict the court rendered judgment for defendants, and the plaintiff has appealed.

It is somewhat difficult, because of apparent contradictions and inconsistencies in the defendants' pleadings and in the evidence, to determine just what the facts are in some respects; yet we have concluded the following to be the substantial facts, to wit:

December 20, 1909, defendants, having organized themselves into an association styled "the Horse Improvement Company of Forney, Tex.," purchased from Oltmanns Bros. a stallion and gave this note in part payment. This horse proved unfit for the purposes for which he had been bought, and in the following October died. Fourteen hundred dollars had been paid for him in cash, either in addition to or including the $1,200 collected under an insurance policy on the horse and paid to Oltmanns Bros. concerning which question the evidence is not very clear. Upon the first horse's death and the delivery to Oltmanns Bros.' agent, one Eurton, of the insurance money, defendants secured a second horse, presumably the delivery thereof being made at Oltmanns Bros.' barn at Ft. Worth, or at the defendants' place of residence, Forney, Tex. The note in question was one of a series of three of like amount given in part payment for the first horse, and upon the death of said horse and the delivery of the second horse it was agreed by all parties that the three notes theretofore given should stand and be considered as part consideration for the second horse. The other two notes were paid by defendants upon maturity, and do not enter into this case. With the second horse Oltmanns Bros. delivered, and defendants accepted, the following contract of guaranty, to wit:

"Landschaftsrat
"O. V. Oltmanns,          Gebh. Oltmanns,
"Leer, Germany.          Watseka, Illinois.
          "Oltmanns Bros.,
"Pioneer Importers and Breeders of German, Hanoverian and Oldenberg Coach, Percheron and Belgium Draft Horses.

"Watseka, Illinois, December 20, 1910.
"Guarantee on the Imported German Coach Stallion Albanus.

"We have this day sold the imported German coach stallion named Albanus, No. ——, to the —— Horse Improvement Company of Forney, Tex. And we guarantee the said stallion to be a satisfactory and sure breeder, provided he has proper care and exercise and remains in as healthy and sound condition as on date of delivery. If said stallion fails to be as represented above, we guarantee to take the said stallion back and give to the said company another stallion of equal value, provided he is returned to us at our barns in as sound and healthy condition as he is now, by March 1, 1912.

"This bill of sale contains all the agreements of warranty or guaranty made by us in the sale of the above-mentioned horse, and it is expressly provided that we shall not be liable for any claim that may hereafter be made alleging any verbal agreement of ourselves or agents in the sale of said horse."

The second horse also proved to be unsatisfactory, and prior to the agreed date of return, March 1, 1912, defendant W. R. Crittenden came to Ft. Worth and met Mr. Eurton at the Union Depot and told him of the unsatisfactoriness of said horse, and that the defendants desired to return him and get another in exchange, under their aforesaid contract. Eurton told Crittenden that Oltmanns Bros. did not have any stallions at that time at their Ft. Worth barns; that they usually shipped 15 to 20 in a shipment from their stables at Watseka, Ill., and when the next shipment arrived, he (Eurton) would notify Crittenden by phone so that he could come to Ft. Worth and make the desired exchange. No notification was received by Crittenden, or by any of the other defendants, of the arrival of such a shipment. In the fall of 1912 Eurton was at Forney with another horse for sale, and again defendants told him of the worthlessness of the horse Albanus for breeding purposes, and Eurton promised upon his return to Watseka to take the matter up with his principals, and get another horse for defendants in exchange, but no further word was ever received from Eurton or Oltmanns Bros., with reference to such exchange. Prior to March 1, 1912, Crittenden also wrote to Oltmanns Bros. at Ft. Worth with reference to such exchange, but received no reply.

Plaintiff objected to the testimony of Crittenden as to the alleged statements and promise made by Eurton on the occasion of their meeting at the Union Depot at Ft. Worth, and appellant urges such objection in her second assignment. The asserted grounds in support of said assignment are: (1) That it was within the knowledge of each of defendants that Eurton was merely a salesman, and had no authority to vary or change any contract between defendants and Oltmanns Bros.; (2) that defendants knew that Oltmanns Bros. had a manager, other than Eurton, in charge of its Ft. Worth barns.

The appellees answer that, under the facts in this case, Eurton is shown to have had the the authority of a general agent, that he not

only sold horses, but made adjustment of claims, collected insurance on horses sold, etc., and that therefore the acts shown and promises given in the evidence objected to reasonably came within the actual or apparent scope of his authority, i. e., within the authority theretofore shown to have been exercised by him and ratified and confirmed by his principals.

Upon this phase of the question there might be some room for appellees' contention, if they had any pleadings as a basis for such testimony. The special guaranty limited defendants' remedy to a return of the horse by March 1, 1912, and the securing of another horse in exchange therefor. There might be some room for doubt as to where this exchange should take place, whether at the Ft. Worth barns, or at the main stables at Watseka, Ill. It will be noted that the contract is headed "Watseka, Illinois," but it is not specified where the barns are located to which such return should be made. From the heading of the contract it would appear that one of the Oltmanns lived in Germany, while the other was located in Illinois, and the evidence aliunde the written contract of guaranty suggests that the delivery of the horse was made at Ft. Worth. Hence, under proper pleadings, possibly parol evidence would have been admissible to explain the seeming ambiguity or uncertainty as to the place of exchange agreed upon by the parties. However, the issue presented here is one of waiver, in the nature of an estoppel, and there is an utter absence of pleading to support such a defense, and to authorize the evidence of which complaint is made. Defendants in their first supplemental answer did plead as follows:

"They immediately notified Oltmanns Bros. at Ft. Worth, Tex., and at *Waureka*, Ill., that the horse was no good. They came to Ft. Worth, Tex., and found that Oltmanns Bros. had left the state and could not be found. They brought the horse to the station where he could be shipped, but there was no one to whom they could ship the horse. The Oltmanns were notified, and would not answer, and up to this date they have never answered, and have never been where the defendants could make the said Oltmanns Bros. take back the horse. The defendants have always tendered the horse back, and have asked for the guaranty to be made good, but all to no avail. The date for the return of the horse had not expired when Oltmanns Bros. left the state of Texas, and in the guaranty made there was no time limit."

But the admitted evidence is not in support of the plea that Oltmanns Bros. had left the state prior to March 1, 1912, and could not be found, and did not give the defendants instructions where to ship the horse, etc. The evidence admitted is merely upon a question of waiver of time. The same witness who testified as to Eurton's statements also testified:

"Eurton was a salesman and sold the first horse. Mr. Boekhoff was the manager of Oltmanns Bros. at that time in Ft. Worth, and he was manager the last I knew of it, and I knew of no one who succeeded him."

40 Cyc. p. 254, says:

"A waiver takes place where a man dispenses with the performance of something which he has a right to exact, and is a technical doctrine introduced and applied by the courts for the purpose of defeating forfeitures."

In Underwood v. Farmers' Joint-Stock Ins. Co., 57 N. Y. 500, 505, the court said:

"The doctrine of estoppel lays at the foundation of the law, as to waiver. While one party has time and opportunity to comply with a condition precedent, if the other party does or says anything to put him off from his guard, and to induce him to believe that the condition is waived, or that 'a strict compliance with it will not be insisted on, he is afterward estopped from claiming nonperformance of the condition. Unless there is some consideration for a waiver or some valid modification of the agreement between the parties which contains the condition, I think there can be no waiver of a condition precedent, except there be in the case an element of estoppel."

One sued for the price of articles cannot avoid the limitation of time in which to return said articles if not satisfactory by showing a waiver thereof, unless he pleads such waiver. Cement Co. v. Havard Co., 155 S. W. 656; Ginners' Mut. Underwriters' Association v. Wiley & House, 147 S. W. 629, and cases there cited.

[1] We are therefore of the opinion that error was committed in admitting this testimony over the objection of defendant.

[2] Defendants seems to rely, both in their pleadings and in their evidence, upon a failure of consideration. But since they, in the contract of guaranty accepted, limited their remedy to a return and exchange of the horse by March 1, 1912, a plea and showing that the horse had proved worthless for the purpose for which he was sold would avail them nothing, unless they should show a compliance on their part with the terms of the contract of guaranty, or that they were prevented from so complying by reason of the act of or by reason of conditions brought about by Oltmanns Bros. Oltmanns Bros. v. Poland, 142 S. W. 653, writ denied; Holbert v. Sanzenbacher, 159 S. W. 1054; Walters v. Akers (Ky.) 101 S. W. 1179; and other cases cited in First National Bank of La Fayette, Ind., v. Fuller (No. 8496) 191 S. W. 830, decided by this court January 6, 1917, not yet officially reported.

For the error indicated, the judgment in this case must be reversed, and the cause remanded for a new trial. We do not feel justified in rendering judgment for appellant, inasmuch as the evidence tends to show that Oltmanns Bros. had abandoned their barns in Ft. Worth and removed their horses and other property from the state prior to March 1, 1912, and inasmuch as the contract of guaranty does not clearly and specially designate the place where an exchange of horses could be made under the contract. Hume v. Sherman Oil & Cotton Co., 27 Tex. Civ. App. 366, 65 S. W. 390.

Reversed and remanded.