**Howard M. TRUSSEL, Appellant,**

**v.**

**WESTINGHOUSE ELECTRIC SUPPLY COMPANY, Appellee.**

**No. 13199.**

Court of Civil Appeals of Texas.

San Antonio.

April 24, 1957.

Rehearing Denied May 22, 1957.

Hartley, Alamia & Perkin, Pharr, for appellant.

Royce A. Oxford, Edinburg, for appellee.

W. O. MURRAY, Chief Justice.

This suit was instituted by Westinghouse Electric Supply Company against Howard M. Trussel, doing business as Tex Trussel Plumbing & Electric Company, seeking to recover the contract price, or the reasonable value, of two reduced voltage starters for a 50 HP and a 75 HP electric motor of an automatic type, allegedly delivered to defendant at his request. Defendant admitted the delivery of the items, but asserted that they were not the type he had ordered, he allegedly having ordered the manual control type with push buttons.

At the close of the evidence, the court granted plaintiff's motion for an instructed verdict, took the case from the jury and rendered judgment in plaintiff's favor against defendant in the sum of $1,220, the alleged contract price of the starters, plus interest, and attorney's fees in the sum of $300, from which judgment Howard M. Trussel has prosecuted this appeal.

Appellant's first contention is that the court reversibly erred in granting appellee's

motion for an instructed verdict, as there were issues of fact which should have been submitted to the jury.

On August 28, 1954, appellee sent to appellant its quotation No. A–234, giving prices, among other things, upon reduced voltage motor starters of the manual control type. On September 15, 1954, appellant placed his order No. 1678 for, among other things, two such motor starters, as per quotation No. A–234. On September 18, 1954, appellant wrote appellee to hold shipment of this order until he could secure a new contract, stating that the two 20 HP motors had been changed to 25 HP, and asking for quotation by return mail for switch and starters for these motors. On September 21, 1954, appellant wrote, " * * * concerning our purchase number 1678 beg to advise that we want the push bottons in the covers. Also, please quote all of the same items in dust tight enclosures." On September 22, 1954, appellee sent its "Quotation No. A–246," and on October 8, 1954, appellant wrote, "Your original quotation #A–234 has been changed by the owners request; therefore, please cancel our purchase order #1678 and fill the order as per our purchase order #1702 given to Wally Clark."

Thereafter appellee shipped to appellant the two motor starters and they were received and installed by appellant. On November 29, 1954, appellant wrote appellee as follows:

"We have completed the referenced job, only to find that the two Reduced Voltage Starters are not as quoted. This fact became known after the 2 units were completely installed and came about when the invoice arrived and was found to be about $600.00 above the quotation.

"Your salesman, Wally Clarke, was in the office when the invoice arrived, and we set about to determine the why and wherefores. He suggested selling the owner on the two units we now have in lieu of those ordered. Mr.

Jackson was here for deer season, so he was immediately contacted. He refused to accept them except at the original price. I've since called on him personally to no avail.

"In view of the above, we will need the 2 units originally quoted. We will change these out on arrival and return the ones now installed to you for credit."

On December 1, 1954, appellee wrote appellant as follows:

"Subject:  Your Purchase Order No. 1702 and Your Letter of November 29, 1954

"Gentlemen:

"With reference to the above purchase order and letter, if you will check all of our correspondence and quotations in regards to this job you will find that on August 27th I quoted you, my quotation No. A–234, and you in turn issued us a purchase order No. 1678.

"September 18th you wrote us asking us to please quote you on starters for 25 HP motors instead of 20 HP motors. I wrote you on September 20, 1954, advising you that there would be no increase in price for starters for 25 HP motors over the ones I had quoted you for 20 HP motors and I also called your attention in this letter, that in my original quotation, I had not quoted starters with pushbutton in the covers, but that on your order No. 1678 you had ordered the linestarters to have pushbuttons mounted in the covers. I called to your attention in this letter that I had quoted you on separate pushbuttons or I could re-quote you on linestarters with pushbuttons mounted in the cover.

"You wrote me September 21st asking me to please re-quote all items with pushbuttons in the covers and also to be in dust type enclosures. This I did on September 22nd, my quotation No. A–246, and you will note that I quoted you a starter for a 50 HP motor at $470.25 each and a starter for a 75 HP motor at $795.15.

"On October 8th you wrote us asking to please cancel your purchase order No. 1678 and fill the order No. 1702 as you gave it to our salesman, Mr. Wally Clarke. This order called for one 50 HP reduced voltage 440 volt starter with pushbutton and reset in cover and one 75 HP reduced voltage 440 volt starter with pushbutton and reset in cover. This is what we shipped you on our invoice No. 960382 and you will note that the 50 HP starter was billed to you at $40 each instead of the $470.25, and the 75 HP starter at $780 each instead of $795.15 as quoted you on our quotation A–246. We are at a loss to find the $600 that you mention in your letter of November 29th as being above prices quoted, unless you have gone back to our first quotation which you wrote and cancelled the order that you placed with us on that quotation.

"As for returning the material that you now have, we would have to ask authority from the Westinghouse Electric Corp. and I am sure that they would charge at least a 25 to 50% restocking charge if they would accept it for return. You have installed this equipment and it could not be re-sold as new merchandise.

"We regret that there has been any misunderstanding in regards to these two purchase orders and two quotations that we have mailed you and you have sent us, but I am sure when you have reviewed all of the correspondence that we have had that you will agree that we could not have acted otherwise in furnishing you the starters that we did on our invoice No. 960382. If there is anything that I have not cleared up in this letter, please do not hestitate to call it to our attention."

In reply to this letter appellant contended that he gave order No. 1702 to Wally Clarke, agent of appellee, and that Clarke made a mistake in turning it in, and thereby caused the more expensive motor starters to be shipped. On this matter appellant testified as follows:

"I instructed him (Wally Clarke) that this 50 horsepower and 75 horse-power starters were to be as per the original quotation, with the addition of pushbutton, which he assured me would run not more than $17.50; and I asked him at the time if he didn't want to go back and get the numbers and place them in there and he said, 'Certainly not', that he was leaving immediately for Corpus Christi, that he understood it completely and would attend to it immediately."

Wally Clarke testified as a witness and did not deny that this conversation took place.

Thereafter several letters were exchanged between the parties, appellee demanding payment, and appellant contending that the starters which he ordered had not been delivered. Appellant further contended that appellee's agent, Wally Clarke, had urged him to try to get the owner of the premises where the starters had been installed to accept these automatic starters and pay the additional cost. This appellant tried, but was unsuccessful in getting the owner to accept the starters. Appellant told appellee to send the less expensive starters and he would install them and return the more expensive ones. Appellee would not agree to this. The expensive starters were used by appellant for about eleven months. Appellant tried without success to sell these starters at a 20% discount.

Inasmuch as the trial court took the case from the jury and rendered judgment for appellee for the full amount sued for, including attorney's fees, we must view the evidence in a light most favorable to appellant, disregarding all conflicts in the testimony, and indulge every reasonable conclusion, deduction and inference warranted by the evidence in appellant's favor. Hull v. FitzGerald, Tex.Civ.App., 232 S.W.2d 93, affirmed, 150 Tex. 39, 237 S.W.2d 256; Rodgers v. Tracy, Tex.Civ.App., 242 S.W.2d 900.

When this is done, it appears that the starters shipped were not the starters

ordered; the starters arrived at the job site and were installed by appellant's workmen before he discovered or had an opportunity to discover the mistake. The mistake was discovered either the same day or the next day, when appellant received the invoice and saw that the price was about $600 more than he expected. Wally Clarke was present when the invoice arrived, and the matter was called to his attention. He explained at once that appellee had shipped automatic starters when manual control type were ordered. Clarke then and there suggested that appellant try to sell the owner on the idea of keeping the automatic type and paying the increased price, but the owner refused. Thereafter appellant wrote to appellee asking that the manual control type starters be sent to him and he would install them and return the automatic starters. Appellee answered that they could not accept the return of the automatic starters as they would now be classified as used starters. Thereafter nothing further was done, and after the starters had been used for about eleven months this suit was filed.

We conclude that the trial court erred in discharging the jury and rendering judgment for the price shown on appellee's invoice. There was a mistake made in shipping the automatic starters, or at least the evidence does not show conclusively that no mistake was made. Under all the circumstances there never was a contract price agreed upon for the automatic starters. When the automatic starters were received, appellee through its agent, Wally Clarke, was immediately notified of the mistake. The attempt to persuade the owner to keep the automatic starters was done at the suggestion of appellee's agent. Appellant soon learned that the owner would not agree to keep and pay for the more expensive starters. If appellant had then taken the starters out and ceased to use them, he would probably not have been liable for them, but when he continued to allow the use of them for some. eleven months, he became liable for the reasonable value of the starters. 37 Tex.Jur. pp. 413, 414, § 182; Hume v. Sherman Oil & Cotton Co., 27 Tex.Civ.App. 366, 65 S.W. 390; Bixler v. Dolieve, Tex.Civ.App., 167 S.W. 1102; Nations v. Thomas, 25 Tex.Supp. 221, 222.

The reasonable value of the two automatic starters was a question of fact which should have been submitted to the jury as well as perhaps other issues of fact. The court reversibly erred in discharging the jury and rendering judgment against appellant for the price shown in the invoice. Plotner & Stoddard v. Markham Warehouse & Elevator Co., Tex.Civ.App., 122 S.W. 443, subsequent appeal, Tex.Civ.App., 140 S.W. 356.

The judgment is reversed and the cause remanded.