EARLY–FOSTER CO. v. GOTTLIEB.
(No. 6092.)

(Court of Civil Appeals of Texas. Austin.
May 19, 1919. Rehearing Denied
June 25, 1919.)

1. SALES ⚙═85(1) — CONTRACTS — CONSTRUC-
TION—INCOMPLETE CONTRACTS—"DEFICIT."

A grain dealers association rule, as to
rights of buyer upon seller's failure to deliv-
er, which rule was made a part of a sale con-
tract, from its caption and language, including
the use of the word "deficit," which implies a
deficiency, *held* to apply to incomplete con-
tracts only; that is, performed in part.

[Ed. Note.—For other definitions, see Words
and Phrases, Deficit.]

2. SALES ⚙═85(1)—CONTRACT—CONSTRUCTION
—BREACH—"DEFAULTED."

The use of the word "defaulted" in a grain
dealers' association rule as to buyer's rights
upon seller's failure to deliver, which rule was
made a part of a sale contract, embraced a
willful breach as contradistinguished from sell-
er's mere inability to complete the contract.

[Ed. Note.—For other definitions, see Words
and Phrases, First and Second Series, Default.]

3. SALES ⚙═85(1) — CONTRACT — DEFAULT —
"INCOMPLETE SHIPMENT."

A contract for sale of two cars of alfalfa,
under which seller delivered one and defaulted
in delivery of the other, was an "incomplete
shipment," within the meaning of a rule of the
grain dealers' association incorporated into the
sale contract under which the buyer was pre-
cluded from recovering damages for breach,
where he did not buy in the deficiency for sell-
er's account.

4. SALES ⚙═85(1) — CONTRACTS — CONSTRUC-
TION—BREACH—INCOMPLETE SHIPMENTS.

Where there was total and complete failure
of seller to perform sale contracts, which the
court found were breached by seller, the grain
dealers' association rule as to buyer's rights
on seller's failure to complete shipments in-
corporated in the sale contract was inapplica-
ble, and buyer could rely upon, sue for, and re-
cover damages for the breach.

5. APPEAL AND ERROR ⚙═971(2) — EVIDENCE
⚙═489, 498½—BREACH OF CONTRACT—MAR-
KET PRICE—QUALIFICATION OF WITNESS.

In buyer's action for breach of contract by
nondelivery, the question of market price of
goods is usually a matter of opinion, the ques-
tion of qualification of a witness to testify in
relation thereto is largely a discretionary mat-
ter, reviewable only in case of clear abuse of
discretion, and admission of testimony of a
witness whose knowledge was limited to daily
market quotations received at another city in
the same state and from other dealers in dif-
ferent places throughout the state, was not
such an abuse of discretion.

6. APPEAL AND ERROR ⚙═1048(2)—HARMLESS
ERROR — UNQUALIFIED WITNESS — AMPLE
TESTIMONY OF QUALIFIED WITNESSES.

In an action for seller's breach of sale con-
tract by nondelivery, if unqualified witness

were permitted to testify upon the issue of
market value, where the uncontradicted testi-
mony of other witnesses whose qualifications
were not assailed shows the market value of
the goods on date of breach to have been more
than found by the trial court, the error, if
any, was harmless.

7. SALES ⚙═46 — REFERENCES' TO BUYER'S
FINANCIAL ABILITY—SELLER'S FAILURE TO
INVESTIGATE.

Where a seller failed to investigate refer-
ences as to buyer's financial ability, given by
the buyer prior to the making of the contracts,
or to make any independent investigation as to
buyer's financial standing, a seller is precluded
from claiming that the contracts were induced
by any statements or representations by appel-
lee as to his financial ability.

Appeal from District Court, Williamson
County; Cooper Sansom, Special Judge.

Action by J. Gottlieb against the Early-
Foster Company. Judgment for plaintiff,
and defendant appeals. Judgment reformed
and affirmed.

Wilcox & Graves, of Georgetown, for ap-
pellant.

Brooks, Hart & Woodward, of Austin, for
appellee.

BRADY, J. Appellee brought this suit for
damages arising out of the breach of certain
contracts with appellant for the shipment of
hay and alfalfa. The first contract covered
two cars of New Mexico alfalfa, one of which
was delivered to and paid for by appellee;
but it was alleged that appellant breached
the contract as to the remaining car, which
it failed and refused to deliver. The second
contract was for the delivery of 10 cars of
No. 1 prairie hay, and the third contract
covered five cars of New Mexico alfalfa, both
of which contracts it was alleged appellant
had breached, and had failed and refused to
deliver the hay and alfalfa. The action was
one at law to recover the difference between
the contract price and the market price of
such products.

Appellant answered by general denial and
special answer, specially alleging that the
contracts were void because of the fraud of
appellee in representing that he was solvent
and able to pay for the products, when as a
fact he was insolvent and unable to pay and
had no intention of paying for same. It was
further specially pleaded by appellant that
the rules of the Texas Grain Dealers' Asso-
ciation became and were a part of the con-
tracts, and that under such rules the ship-
ments covered by the contracts were to be
made within from 3 to 10 days, and, fur-
ther, that under the rules of the association
it became the duty of appellee, upon the fail-
ure of appellant to ship the hay and alfalfa,
to either agree with the appellant to extend
the contracts, or to cancel outright the con-
tracts, or to buy in for the seller's account

the respective quantities of hay and alfalfa which had not been delivered. It was alleged that appellee did not exercise either of these options, thereby failing to comply with the terms of the contract, and was therefore not entitled to recover.

Appellee by supplemental petition denied all the averments of the answer, and specially pleaded that rule 9 of the Texas Grain Dealers' Association, invoked by appellant, had no application to willful breaches by the seller, or breaches for any other reason than inability to deliver within the time provided by the contracts; that appellant notified appellee that it would not further perform any of the contracts sued upon, and canceled the same, and that appellee thereupon also elected to cancel the contracts, as he had a right to do under the provisions of the rule, and did cancel the same, and instituted this suit for the recovery of his damages.

The case was tried without a jury, and the court rendered judgment for appellee in the sum of $888, with interest from December 18, 1917; the judgment including damages for the breach of each of the contracts in suit.

### Findings of Fact.

At the request of appellant, the trial court filed the following findings of fact and conclusions of law:

"(1) The court finds from the testimony that on October 12, 1917, and October 18, 1917, respectively, the defendant contracted with plaintiff to sell and ship to plaintiff said hay and alfalfa at certain prices as alleged in plaintiff's petition and as admitted in paragraph 4, section 1, of defendant's first amended original answer.

"(2) That under said contracts defendant became bound and obligated to ship to plaintiff at Taylor, Tex., ten carloads of No. 1 prairie hay at $23 per ton delivered at Taylor, Tex., two carloads of choice New Mexico alfalfa at $35 per ton, and five carloads of choice New Mexico alfalfa at $36 per ton, said contracts being subject to the rules of the Texas Grain Dealers' Association; the terms in said contracts for the sale of alfalfa being 'sight with exchange payable on arrival with bill of lading attached per full amount of invoice.'

"(3) That the two carloads of prairie hay shipped by defendant to plaintiff under said contract of October 12, 1917, were not No. 1 prairie hay, not of the class of hay contracted for, but of an inferior grade, and that plaintiff was not bound under his contract to accept said two carloads of hay, and did not accept them.

"(4) That defendant furnished one carload of choice New Mexico alfalfa at $35 per ton, which was received by plaintiff, accepted, and paid for, but that defendant failed and refused to furnish the other car contracted for.

"(5) That defendant failed and refused to furnish the five cars of choice New Mexico alfalfa sold by defendant to plaintiff under said contract of October 18, 1917.

"(6) That negotiations under said three contracts for the delivery of said hay and alfalfa continued until some time between November 15, 1917, and December 18, 1917, when said three contracts were wholly breached by defendant, and that plaintiff thereupon canceled said three contracts outright, and in due time entered suit.

"(7) That the reasonable market price of class 1 prairie hay at the date of the breach of said contract at Taylor, Tex., was $31 per ton, and plaintiff's damage under said contract of October 12, 1917, on ten cars of hay of eight tons per car aggregates $640; that the reasonable market price of choice New Mexico alfalfa at Taylor, Tex., at the date of the breach of said contract of October 15, 1917, was $41 per ton, and plaintiff's damage under said contract was $6 per ton for one car of alfalfa of eight tons per car aggregating $48, and plaintiff's damage under said contract of October 18, 1917, was $5 per ton on five cars of alfalfa of eight tons per car, aggregating $200, making the total damage of plaintiff by reason of such breach of said contracts $888.

"(8) That the defendant did not breach said contract because of any adverse reports on plaintiff's financial standing made by parties to whom defendant had been referred by plaintiff.

"(9) That on or about November 15, 1917, the defendant informed the plaintiff over the telephone that defendant would not deliver any other hay or alfalfa under the contract which had been entered into.

"(10) That when the defendant refused to ship and deliver any other hay or alfalfa under said contracts, plaintiff did not buy in the quantities under the contracts which has been delivered for the account of the defendant; that the plaintiff did not send defendant any account or claim of the amount of damage he claimed, and did not draw on defendant for the amount of damages claimed, and did nothing to notify defendant of the amount claimed until this suit was filed.

"(11) That the first two cars of hay which were shipped by the defendant to plaintiff arrived at Taylor, Tex., on the last day of October or the 1st day of November, and were refused by the plaintiff, because of an inferior grade to that contracted for by plaintiff.

### "Conclusions of Law.

"(1) Defendant, under the contract sued on, became legally obligated to ship and deliver to plaintiff at Taylor, Tex., hay and alfalfa as specified in said contracts.

"(2) That under the rules of the Texas Grain Dealers' Association (rule 36) eight tons of hay constituted a carload.

"(3) That under said rules of the Texas Grain Dealers' Association (rule 9) upon a breach of said contracts by defendant plaintiff had the right and option to cancel said contracts outright, which option he exercised.

"(4) That plaintiff's measure of damages under such breach of contracts by defendant was the difference between the contract price of said hay and its reasonable market value at Taylor, Tex., on the date of such breach."

The findings of fact were supported by the evidence, with the qualification hereinafter mentioned as to the sixth finding of fact.

### Opinion.

The principal questions presented on this appeal involve and are to be determined by

the proper interpretation of the meaning and effect of the rules of Texas Grain Dealers' Association, incorporated by reference in each contract, and especially by the meaning and effect of rule 9. This rule reads as follows:

"Rule 9. *Incomplete Shipments.* When the seller finds that he will not be able to complete a contract within the agreed limit, it shall be his duty at once to advise the buyer by mail, telephone, or telegraph, whereupon it shall be the duty of the buyer at once to elect either to buy in or to cancel the deficit, or, with the consent of the shipper, to extend the contract to cover the said deficit. If the seller fails to notify the buyer of his inability to complete his contract as above provided, the liability of the seller shall continue, until the buyer, by the exercise of due diligence, can determine whether the seller has defaulted, when the buyer shall immediately (a) agree with the seller upon an extension of the contract to cover the deficit; (b) cancel the contract outright; or (c) buy in the deficit for the seller's account."

It was pleaded by appellee that this rule had no application to willful breaches by the seller, but merely applied to a failure to perform through inability, and he seems also to have relied below upon the position that this rule applied only to incomplete contracts; that is to say, where the seller had performed in part, but was unable to complete delivery of the remainder of the products covered, and not to a total failure to perform.

These contentions are resisted by appellant, and it is claimed that, when appellant breached the contracts, appellee, upon notification of such breach, canceled the contracts outright, as found by the trial court in the sixth finding of fact, and that therefore appellee was not entitled to recover any damages whatever. The contention involves the further claim that, if appellee elected to hold appellant for damages, he was required by rule 9 to buy in for the seller's account the hay and alfalfa not delivered, on the open market, and, having failed to do so, he is precluded from a recovery.

We have been unable to agree entirely with the contentions of either party. With much difficulty, we have been led to conclude that the rule should be interpreted partly in accord with the views of appellant, and in part with those of appellee. Upon the assumption, the correctness of which is not doubted, that it was competent for the parties to embody this rule in the contracts, and thus to provide for its discharge or annulment, and fixing and limiting the rights and liabilities of each in event of default, we have sought to ascertain the true meaning of the rule and the intent of the parties, and to avoid any strained or artificial construction.

[1-3] Keeping in mind the primary purpose and object of the parties in adopting the rule, we have decided that it should be fairly construed as follows:

First. That it applies only to incomplete contracts; that is to say, to contracts which the seller has performed in part, but is either unable or unwilling to complete. This construction is favored not only by the caption of rule 9, but is fairly ascertained from the language employed throughout the rule. The first part, or that portion covered by the first sentence of the rule, in defining the duties of the buyer, where the seller has informed him of his inability to complete the contract within the agreed time limit, refers to the "deficit", and the latter part of the rule likewise employs the same term. In its plain and ordinary meaning, the word "deficit" implies a deficiency, and as here used clearly means a deficiency in the quantity or a failure of the seller to ship a portion of the products contracted to be delivered.

Second. The first part of the rule has no application to a willful breach by the seller, and applies only to contracts which the seller has found himself unable to perform within the agreed term limit for some other reason than mere unwillingness, or intentional refusal to perform. The latter part of the rule, however, should be given a different interpretation, in that it completes the subject-matter of the rule and provides for a larger situation.

We are impressed with the argument of appellee's counsel in the brief that the latter part of the rule covers, not only a case of inability, but also an intentional or willful breach or default. The use of the word "defaulted," in association with its context, seems to express the intention to embrace a willful breach of the contract, as contradistinguished from the mere inability of the seller to complete the contract. The rule was made for the purpose of enabling the buyer to determine whether or not the seller, through unavoidable causes, is unable to fulfill the contract, or whether he has willfully breached it, because it would not be profitable to him to fulfill it.

Third. We are of the opinion that the three options or privileges accorded the buyer by the terms of the rule are in substance these: (a) To immediately make a new agreement with the seller for an extension of the time of the contract to cover the deficit. (b) To cancel the contract outright; that is to say, to cancel and extinguish it completely as to the deficit. (c) To buy for the seller's account on the open market the deficiency in quantity caused by the seller's default. The purpose of the last-named option was to cover the case where the buyer seeks to keep the contract alive, or hold the seller to the obligation of the contract to pay damages upon its breach, and to fix absolutely and certainly the amount of damages by a purchase in the market, rather than resort to proof of the market price.

It is not contended that appellee exercised either option (a) or (c), but the controversy

centers around the question of exercise by him of option (b); that is, the privilege of canceling the contract outright. We believe that the phrase "cancel outright," as employed in this rule, means to annul and extinguish the contract as to the deficit or unperformed portion of the contract, and to put an end to the obligations of the contract as to both parties, with reference to such deficit.

As thus interpreted, we hold that rule 9 of the Texas Grain Dealers' Association applied to what we have termed the "first contract," namely, the contract of October 15, 1917, which was for two cars of alfalfa, for the reason that this contract was an "incomplete shipment" within the meaning of the rule. The seller shipped one car, which was accepted and paid for by the buyer, but defaulted as to the remaining car. Upon such default, it was the duty of appellee to exercise either of the options provided, and upon failure to do so he could not recover. Under the evidence, we find that he did neither, and, under the operation of the rule, he is precluded from recovering damages as to the contract we are now considering.

The trial court, in the sixth finding of fact, found that the three contracts were wholly breached by appellant, "and that plaintiff thereupon canceled said three contracts outright, and in due time entered suit." In the third conclusion of law, the trial court concluded that, upon appellant's breach, appellee, under the rules of the Texas Grain Dealers' Association (rule 9), "had the right and option to cancel said contracts outright, which option he exercised." However, in the light of the pleadings and evidence in the record, it is clear that these conclusions were based upon the theory that the rule, in providing for the option to "cancel the contract outright," did not mean to annul and terminate the contract completely, thus putting an end to all the unperformed obligations of the contract, but that it was construed to mean that appellee, upon default by appellant, had the right to treat the contract as breached by appellant, and to sue in an action at law to recover the difference between the contract price and the market price.

This theory we think erroneous, and the conclusions of the trial court, under the pleadings and the evidence, must be treated as findings that, when appellant wholly breached the contracts, appellee elected to keep the contract alive for the purpose of recovering his damages at law, and canceled the contracts only in the sense that he elected to rely upon the breach by appellant and to sue for damages. If, however, these conclusions should be held to be a finding that appellee canceled the contracts outright in the sense of wholly annulling the same and terminating all obligations under them, then

as to the contract of October 15, 1917, to which we have held the rule applied, there could be no recovery by appellee. It follows that, in either event, the trial court erred in allowing the sum of $48 as damages for the failure of appellant to deliver one car of alfalfa under this contract, and appellant's first and second assignments of error are, to the extent of the damages awarded under the contract of October 15, 1917, sustained.

[4] As to the remaining contracts, those of October 12, 1917, and October 18, 1917, the situation is different. Under our construction of rule 9, it had no application to these contracts, because they were not incomplete shipments, and there was no deficit within the meaning of the rule. It was a case of total or complete failure to perform, and, the trial court having found that these contracts were breached by appellant, and the rule not applying, appellee had the right to rely upon such breach, and to sue for and recover his damages. It results, in so far as appellant's first and second assignments relate to these contracts, they must be and they are overruled.

[5] In its third assignment of error, appellant complains of the action of the trial court in admitting the testimony of the witness J. M. Clements as to the market price of hay and alfalfa at Taylor, Tex.; it being contended that this witness was not qualified to testify on this point, because his knowledge was limited to daily market quotations received at Waco, Tex., from other dealers in different places throughout the state. The question of market price is usually, if not always, a matter of opinion, and the question of qualification of a witness to testify in relation thereto is largely a matter of discretion for the trial court. It is only for a clear abuse of such discretion that a cause will be reversed, and we do not think that has been shown. However, the testimony of Mr. Clements, considered in its entirety, shows that he was qualified to testify upon this subject. The objection went to the weight of the testimony, rather than its admissibility, if we consider the testimony of this witness as a whole.

[6] There may be some question about the qualification of the witness to testify upon the issue of market value in this case, and this may be conceded, yet the case would not necessarily have to be reversed. The uncontradicted testimony of other witnesses, whose testimony was not assailed, shows the market value of the hay and alfalfa at Taylor, on the date of the breach, as having been as much or more than found by the trial court. It follows that the error, if any, in admitting the testimony of Mr. Clements, is harmless. For the reasons indicated, the third assignment will be overruled.

[7] The fourth, fifth, sixth, and seventh

assignments of error relate to the alleged error of the trial court in failing and refusing to make certain findings requested by appellant, upon the alleged defense that appellee did not intend to pay for the hay and alfalfa, unless he could first arrange to sell it, and that he knew he could not pay for same, and fraudulently induced appellant to make the contracts. Some of these assignments also assail the court's conclusions of law, and the rendition of judgment against appellant, in relation to the same matter.

Upon consideration of the evidence in the record, we think the trial court was amply justified in his conclusions, and in refusing to sustain this defense. The undisputed evidence shows that, before the contracts were signed, appellee gave appellant references as to his financial ability. It was further shown that subsequently, and without investigating and making independent inquiry, appellant entered into the contracts. There was, no testimony upon which the trial court could have found that appellee was not financially able to perform his contracts, and even less that he fraudulently misrepresented anything to appellant, or attempted to deceive. Appellant failed to investigate the reference given by appellee prior to the making of the contracts, or to make any independent investigation, and therefore it is precluded from claiming that the contracts were induced by any statements or representations by appellee. However, disregarding the question of estoppel, the evidence is wholly insufficient to justify any finding of bad faith or fraud upon the part of appellee. The court did not err in refusing to make the findings requested by appellant upon this issue, nor in the conclusions of law, and these assignments are all overruled.

The judgment of the court below will be reformed, so as to eliminate appellee's recovery in the sum of $48 damages under the contract of October 15, 1917, and, as thus reduced, will be affirmed.

Reformed and affirmed.