**MAGNOLIA PROVISION CO. v. COLEMAN et al.    (No. 898–4731.)**

Commission of Appeals of Texas, Section B. March 7, 1928.

**1. Sales ⬅418(6)—In action on contract embodying rule of association requiring purchase of commodity in market upon seller's default, held that buyer must show compliance to recover.**

In action on contract under which seller obligated self to sell and deliver to buyer 409 bales of cotton linters, subject to rules of Texas Cottonseed Crushers' Association, which required buyer upon default of seller to buy in open market an equivalent number of bales through broker who was member of such association, where buyer did not comply with rule but had broker write memorandum reciting that buyer had purchased an equivalent of commodity covered, *held* that rule was expressly made part of contract, and that seller's act was not sufficient to comply therewith; but in order to recover thereunder it became necessary for buyer to allege and prove actual purchase in open market of commodity covered by contract.

**2. Sales ⬅418(6)—Rule of association requiring buyer upon default of seller to make purchase of like commodity in market held mandatory.**

In action under contract embodying rule of association, providing that in case of default buyer must go into open market and make purchase of commodity which seller did not deliver, and that such method for fixing damages was exclusive and failure to follow procedure will defeat claim for breach of contract, *held* that compliance with rule was mandatory, and failure to follow procedure outlined defeated claim for damages.

**3. Contracts ⬅127(1)—Parties to contract may agree upon remedies in case of breach.**

Parties to contract may agree upon remedies that shall accrue in case of breach thereof.

**4. Sales ⬅418(6)—In action on contract requiring buyer on default of seller to purchase commodity in market, where seller outbid buyer, held that act did not constitute waiver of seller's right.**

In action on contract for sale of bales of cotton linters, which embodied rule of association making it obligatory for buyer upon seller's default to go into market and make purchase of commodity contracted for, where buyer submitted lowest bid and seller bid higher, *held* that such act was not waiver of seller's right to have actual purchase made.

Error to Court of Civil Appeals of Sixth Supreme Judicial District.

Suit by W. L. Coleman and others against the Magnolia Provision Company. From a judgment of the Court of Civil Appeals (287 S. W. 294), reversing a judgment of the district court, defendant brings error. Reversed and judgment of trial court affirmed.

Baker, Botts, Parker & Garwood, Walter, H. Walne, J. L. Shepherd, Jr., and S. H. German, all of Houston, for plaintiff in error.

Franklin & Blankenbecker, of Houston, for defendants in error.

LEDDY, J. Defendants in error brought this suit for the recovery of damages claimed to have resulted on account of an alleged breach by plaintiff in error of three contracts under which it was obligated to sell and deliver to defendants in error 409 bales of cotton linters, which it was alleged it failed and refused to deliver in accordance with the terms of the purchase contract. It was averred that the sale contracts were made originally by the plaintiff in error with Hughes-Coleman Linters Corporation, and that the latter subsequently sold the same to defendants in error.

It appears from the pleadings that the contract was made subject to the rules of the Texas Cottonseed Crushers' Association, which required the buyer upon default of the seller to deliver the cotton contracted, to buy in the open market an equivalent number of bales of linters through a broker who was a member of such association. The petition affirmatively showed a failure to comply with this provision. The trial court sustained a general demurrer and certain special exceptions, which in one form or another raised the question of defendants in error's right to recover because the petition showed a noncompliance with the provisions of the purchase contract, which required them at the time and manner set out in the contract to actually purchase the 409 bales of linters in the open market.

The contracts in question contained a provision that they were made subject to the rules of the Texas Cottonseed Crushers' Association, thereby making such rules a part of the contract as much so as if they had been specially written therein. The provisions of the rules, pertinent to the question under consideration, are as follows:

"Rule 205. Section 3. *Failure or Refusal of Seller to Ship.*—Failure or refusal on the part of the seller for ten days after receipt of buyer's instructions to ship in accordance with section 1 of this rule or to ship within the period set out in section 2 of this rule in the case of the products therein specified, shall give the buyer the option to treat the contract as breached by seller and if he elects so to do, he must proceed as required by rules 210–213. Such option must be exercised not later than five days after the expiration of contract period."

"Chapter VIII. *Remedies for Breach of Contract.—*

"Rule 210. *Options to Party Not in Default on Breach of Contract.*— * * * Whenever under these rules, a buyer elects to treat a contract as breached by the seller, he must either cancel the contract, or buy the product for the account of whom it may concern."

"**Rule 212.** *Purchases or Sales for Account of Whom it May Concern.*—In those cases where the buyer or seller elects to buy or sell a product covered by a contract for account of whom it may concern, he must when his right so to do has accrued, all rights of the opposite party having been forfeited, give immediate notice of his intention, by telegram, to opposite party. Such repurchase or resale must then be made through a recognized broker, a member of the association in good standing, in not less than 24 hours and not more than 72 hours after such notice, and shall be for a period of shipping conforming as nearly as possible to the original contract. As soon as such broker has received his order to buy or sell he must immediately notify the interested party by telegraph. The broker will note on his confirmation contract the fact that the sale or purchase was made for account of whom it may concern, and will note thereon the name of the interested party in addition to the names of the buyer and seller in the transaction which he is confirming. He will send a copy of such confirmation contract to each of the three parties named herein.

"**Rule 213.** *Method of Fixing Damages Exclusive.*—The methods of fixing damages for breach of contract outlined in the foregoing rules are exclusive, and failure to follow the procedure there required will defeat a claim for breach of contract."

It appears that defendants in error, after the alleged breach of the contract, sought to fix the measure of damages in a different way from that provided in the contract. Upon bids being called for by a broker of Texas Cottonseed Crushers' Association, they bid lower than any other bidder and were declared the purchaser under such sale. This method was pursued under each of the contracts involved.

Plaintiff in error contends that the contracts specifically required defendants in error on default of the seller as to delivery to buy by actual purchase the equivalent of the linters covered by the contract, and that such rule was not complied with by having a broker write a memorandum reciting that the buyer had purchased from themselves an equivalent of the commodity covered by the contracts.

Defendants in error insist that the purpose of the insertion of this clause in the contract was to fix the measure of damages, and that when the broker called for bids, they having bid several hundred dollars lower than any other bidder, including plaintiff in error, who submitted a bid, it was a substantial compliance with the contract; that as plaintiff in error was benefited instead of injured by such procedure, a recovery should not be denied on account of the failure to perform the contracts in accordance with the literal terms thereof; that if they had actually purchased the commodity covered by the contract, plaintiff in error would have been responsible for a larger sum than was claimed in this suit.

[1] We think it clear that the rules of the Texas Cottonseed Crushers' Association, expressly made a part of the contracts, required an actual purchase in open market of the commodity covered by the contract, and that the same was not complied with by defendants in error purchasing the same from themselves. They could not be both buyer and seller. Such a transaction was not the kind of purchase required by the express terms of the contracts. It was so decided, under the rules of this same association, in the case of Planters' Oil Co. v. Gresham (Tex. Civ. App.) 202 S. W. 146, and Dallas Waste Mills v. Early-Foster Co. (Tex. Civ. App.) 218 S. W. 515. At the time these decisions were rendered, the rules of that association on this subject were permissive in nature and not mandatory. After these decisions were rendered, the association, evidently to meet the holding of the court in those cases, changed the form of the rules so as thereafter to prevent a construction being made that the same merely gave the buyer the option to purchase instead of absolutely requiring a purchase as a condition precedent to recovery.

In the Gresham Case it appeared that the buyer went through the same procedure as in this case, that is, of attempting to purchase from himself. In passing on the question whether an actual sale was made, the court said:

"It is insisted by appellant that the trustee did not purchase the oil for the reason he was both seller and buyer, and in this we are inclined to agree with appellant. He hence did not buy from some outside party, and the rule did not give him the right to buy from himself, but, as we think, required an actual purchase."

In the Early-Foster Case, supra, Chief Justice Key, in discussing a similar question, said:

"We sustain appellant's contention presented by its eleventh assignment of error, to the effect that the plaintiff could not buy other linters from itself, and hold appellant responsible because of the fact that the linters so bought cost more than the contract price. But that ruling does not require a reversal of the case. The plaintiff's testimony shows that linters of the class contracted for had increased in value to such an extent that, if appellant had complied with its contract, the plaintiff would have sold the linters at a profit equal to the amount of the judgment which was rendered against it. In other words, while the provision in the contract may have authorized the plaintiff to purchase other linters in the open market and hold the defendant liable for the difference between the contract price and the price paid for such other linters, that provision is not mandatory, and does not limit the parties to the remedy thereby conferred."

As before stated, the rule under consideration in these cases merely provided that upon default the buyer may protect himself in case of nondelivery of linters bought. It

will be noted the rule, amended since these decisions, changed the word "may" to "must," and by rule 213 expressly stipulated that "the method of fixing damages for breach of the contract outlined in the foregoing rules are exclusive and a failure to follow the procedure there required will defeat the claim of breach of the contract."

[2] We think the court in the cases cited correctly held that the rule, as it then existed, was not mandatory, but permissive, and that the same did not have the effect of limiting the parties to the remedy therein provided. The language of the present rule, however, which is made a part of this contract, is couched in language too plain and specific to be given any other construction than that the same is mandatory. In addition to using the word must, which is generally held to be mandatory, it expressly provides that the method of fixing the damages for breach of the contract is exclusive, and that the failure to follow the procedure outlined will defeat any claim for breach of the contract.

[3] It has been uniformly held that parties to a contract may agree upon the remedies that shall accrue in case of a breach thereof. Tennant v. Fawcett, 94 Tex. 111, 58 S. W. 824; Insurance Co. v. Clancy, 71 Tex. 7, 8 S. W. 630; Adams v. Crittendon (Tex. Civ. App.) 191 S. W. 833; Oltman v. Poland (Tex. Civ. App.) 142 S. W. 653; Buffalo Pitts Co. v. Alderdice (Tex. Civ. App.) 177 S. W. 1044; Hickman v. Sawyer (C. C. A.) 216 F. 281; Haynes v. Plano Mfg. Co., 36 Tex. Civ. App. 567, 82 S. W. 532; Elliott on Contracts, §§ 730–5111.

[4] Defendants in error seek to escape the effect of noncompliance with the provisions of the contracts because of the fact that plaintiff in error, when bids were called for, submitted a bid which was higher than defendants' in error bid. Such act was in no way a waiver of plaintiff in error's right to have an actual purchase of the cotton made, as it might properly assume, when notice was given calling for bids, that the procedure outlined in the contract was to be followed. It is not shown that plaintiff in error's act in submitting its bid was in any way responsible for defendants in error 'not making an actual purchase of the cotton covered by the contracts, as they were required to do under the plain terms thereof.

The placing of this provision in the contract was no doubt for the beneficial purpose of preventing any speculation on the contract, by limiting recovery to an actual loss sustained, instead of a mere loss of profits. Be that as it may, whatever may have been the purpose of its insertion, it was a contract the parties had the legal right to make. In order for defendants in error to recover thereunder it became and was necessary for them to allege and prove that upon default of

the seller they actually purchased in the open market the commodity covered by the contract. The petition showing on its face a noncompliance with such provision, was subject to the demurrers urged, and the same were therefore properly sustained.

Accordingly, we recommend the judgment of the Court of Civil Appeals be reversed and the judgment of the trial court affirmed.

CURETON, C. J. The judgment of the Court of Civil Appeals is reversed, and that of the district court affirmed, as recommended by the Commission of Appeals.