**IDALOU COOPERATIVE COTTON GIN,**
Appellant,

v.

Esmond P. GUE, Appellee.

No. 15369.

Court of Civil Appeals of Texas.

Dallas.

Sept. 26, 1958.

Rehearing Denied Nov. 7, 1958.

Treadaway & Blumrosen, Lubbock, for appellant.

Thomas F. Nash, Dallas, for appellee.

YOUNG, Justice.

The suit by appellee against the Gin Company was for breach of contract and damages by way of lost profits, premised on failure to deliver 48 bales of lint cleaner waste. Upon trial to the court, judgment was rendered against defendant for $1,560 plus $156 attorney's fees—a total of $1,716 and costs, followed by this appeal.

On September 21, 1955, plaintiff Gue had sent to Idalou Cooperative Cotton Gin, Idalou, Lubbock County, the following confirmation of purchase (quoted in part): "* * * I confirm (*purchase* from) you this date as follows: Quantity: 100 bales, averaging 650/700 lbs. each, or about————— lbs. gross weight. Grade: Lint Cleaner Waste from your Hardwick-Etter Lint Cleaners Growth. Staple: (first 100 bales made or to be made this season) Price: Ten and 00/100 (10.00c) cents per lb. Free of all charges FOB in 50 bale cars, Idalou, Texas. Shipment or Delivery: When ready in 50/B cars to Esmond P. Gue, Spot 21A Santa Fe RR. Dallas, Texas. Tare: Guaranteed not to exceed 5%. Actuals: Remarks: To be loaded dry and free of damage. Reimbursement: Sight Draft, B/L attached net, free of exchange to Buyer. Please draw your drafts on Buyer thru Texas Bank & Trust Co., Dallas, Texas. Conditions: Texas Cotton Assn. Rules to govern, except on light weight & heavy weight bales. Insurance effected by buyer from fob cars Idalou, Texas"; and signed by both parties.

Lint cleaner waste is low grade lint cotton, by-product of a cotton gin; and plaintiff Gue, a Dallas dealer in cotton linters, off-grade cotton and cotton waste. On or about November 2, 1955, the Gin Company, at specific request of plaintiff, shipped 52 bales (30,620 lbs.) of the order to Sealy Mattress Company, Fort Worth, which delivery was accepted and the commodity paid for. The remaining 48 bales of cotton lint waste were to be ready for shipment between November 20 and 26; the controversy arising over defendant's failure to complete such part of plaintiff's order. In this connection, plaintiff testified that on November 19, he was called by General Manager Jones to say that the 48 bales of linters were ready, Buyer Gue requesting a couple of days delay, but if not possible, "to go ahead and ship it to me as per my first original instructions, which were in the contract, and which were for Dallas destination."

On the other hand, Mr. Jones testified to an inability to contact plaintiff for instructions on where to ship the 48 bales of linters, finally disposing of same to Frank Biring, cotton buyer, Plainview, at 10¢ per lb.; the latter testifying on behalf of defendant: "Q. What was the difference, if any, in the market price of lint cleaner motes or waste in Plainview, Texas, and in Idalou, Texas? A. None. Q. Was the price which you paid Idalou Cooperative Gin for the lint cleaner motes or waste the price of such cotton on the open market in Plainview, Texas, on the date of purchase? A. Yes."

In line with plaintiff's September letter of confirmation it was stipulated by the parties that the measure of damages involved in plaintiff's suit, and on defendant's cross-action, "shall be determined in accordance with the rules of the Texas Cotton Association in effect on April 1, 1955." These rules are quoted in material part:

"Rule 2—Fulfillment of Contracts. Failure to Complete Contract Within Time Limit—Clause 1—On purchase contracts containing a specified date of delivery, seller must give the buyer sufficient notice of time and place of contemplated delivery to enable the buyer to take physical delivery of the cotton,

distance being considered, and in no event notice of less than 48 hours before the contract date of delivery.

"In the event of failure to give such notice, and/or in event of failure to deliver according to contract the buyer shall have the option of filling such purchase in the open market, and shall charge or credit the seller with the difference between the price paid by him in the open market and the original contract price, in addition to any expenses, or other losses incurred; or when contract provides for Bills of Lading from interior by specified dates, the buyer shall have the option of closing out the contract as provided above, if seller cannot furnish, on demand, within 72 hours after such contract dates, proof that Bills of Lading have been signed, according to the contract.

"Likewise, if the buyer, after being notified by the seller of the time and place of delivery, shall fail to receive the cotton tendered him, as per the terms of the contract, on or before the delivery date specified in the contract, then the seller shall notify the buyer, by telegram, or his intention to resell the cotton, and shall extend the time for taking up the cotton 48 hours (Sundays and Holidays excepted) after dispatching such telegram. At the expiration of 48 hours, if the cotton has not been taken up, then the seller must, within three days thereafter, exercise his right to resell the cotton in the open market and shall charge or credit the buyer with the difference between the price received by him in the open market and the original contract price in addition to any expenses or other losses incurred, and when this is done the contract shall be considered fulfilled.

"(a) In each case party in default shall pay to the party not in default $1.50 per bale. Provided, however, that should defaulting party give the party not in default 48 hours notice of his inability to deliver or accept cotton as per terms of contract due to conditions beyond his control, supported by substantiating affidavits, then, the penalty of $1.50 shall be waived. * *

"Attorney's Fees—Clause 3—It is specifically agreed by the buyer and seller, if any claim accruing under a contract made subject to these rules is placed in the hands of an attorney for collection or is collected by suit through the courts, that ten percent additional on the principal and interest then owing on such claim will be added as attorney's fees."

The controversy in the main narrows to a construction of above rules which the parties had agreed should govern in event of breach of the instant contract of purchase and claim for damages; appellant contending that appellee's remedy was to fill the contract in the open market, charging or crediting the seller with the difference between the price paid by him in the open market and the original contract price, in addition to any expenses or other losses incurred; its liability for default otherwise being $1.50 per bale as per Rule 2, Claus 1(a). (Note: In its cross-action appellant claims the benefit of this latter clause, suing Gue as in default for failure to give shipping instructions.)

Manifestly, the trial court construed the Texas Cotton Association rules relative to said Clause 1, Buyer's remedy, as permissive; in other words, having the choice or option of suing at common law in event of inability to purchase linters in the open market of the quality contracted for. Facts and circumstances underlying this basis of recovery and plaintiff's judgment in consequence are here summarized:

The Gue letter of purchase from defendant was for the "first 100 bales made or to be made this season"; plaintiff testifying that the first product of the ginning season before bad weather or freeze, yielded a better quality of lint cleaner waste; that he had dealt with defendant Gin Company in previous years, considering its first 100

bales "worth a premium." (In such connection, Manager Jones said that if there was any difference in baled linter waste, "earlier cotton is the better cotton.") Gue stated that on learning of defendant's sale of the 48 bales to another party, he went to West Texas and New Mexico for lint waste, finding none as good as contracted for, making a trip of about 2,000 miles; of going to Frank Biring to buy the identical 48 bales, who did not want to sell; that he knew of only three gins having the same quality as contracted for, defendant Cooperative, one at Lamesa where he had already bought the season's output of cotton lint except the first 30 bales, and one at Hale Center, which gin, he was informed, had already sold out to an Oklahoma concern. He further testified that on strength of his agreement with defendant, a contract had been made by him with Direct Mattress Company at Dallas for 25 bales of the lint waste at 16 cents per pound; and that he could have gotten that price for the remaining bales, having been offered 19 cents per pound delivered, while at a Chicago convention.

Several defense witnesses testified to the contrary of the foregoing statements of Gue; in effect that lint cleaner waste of as good quality and kind was available at Lamesa, Hale Center and Plainview gins; Frank Biring, who had purchased the remaining bales in question, testifying that his disposition thereof to a Dallas dealer at 11.54 cents per pound was the best price obtainable for same in the open market.

Defendant filed motion for findings of fact and conclusions of law and, additional thereto, a series of requested findings for the court's approval and inclusion. Findings were duly made and filed but are too lengthy for quotation in full. However, various findings must be stated in effect, together with the court's conclusions; for example that Rules of the Texas Cotton Association were to govern the case made by plaintiff as regards damages: (12) That lint cotton cleaner waste of various grades and quantities was bought and sold in the open market in November and December 1955; (13) Gue, after learning that defendant had sold the 48 bales called for in his contract, did not fill the purchase from defendant in the open market and charge defendant with the difference between the price paid by him in open market and original contract price of 10 cents per pound; (16) that defendant was in default and could have fulfilled its contract by shipping the last 48 bales of 650 pounds each, weighing 31,200 pounds, to plaintiff Gue, Spot 21A, Santa Fe Railroad, Dallas, Texas, the place called for in his letter of confirmation; (21) the highest and best quality of lint cleaner waste made by defendant during the 1955 season (October, November and December) consisted of the first 100 bales produced; (23) Gue was unable to locate and purchase any lint cotton waste of the grade, type or quality for which he had contracted with defendant; (24) he could have sold the 48 bales called for in his contract for at least 16 cents per pound and could have made a profit of at least five cents per pound; (25) being entitled to recover under his contract at least for 31,200 pounds of lint cleaner waste and having suffered a loss of at least five cents per pound by virtue of defendant's default; (26) Gue was not required under rules of Texas Cotton Association to purchase in the open market any lint cotton waste of an inferior grade or quality to that contracted for with defendant; having made reasonable effort to locate and purchase lint cotton waste for which he had contracted, but could not obtain same. (*Conclusions of Law*): (1) That defendant breached its contract with plaintiff in failing to ship 48 bales of lint cleaner waste to him at Spot 21A, Santa Fe Railroad, Dallas, Texas, in November 1955; (2) that Gue was not required to furnish shipping instructions as to said 48 bales other than called for in the contract of September 1955; (3) that Gue was entitled to recover as for breach of contract and profit of five cents per pound on 31,200 pounds, which profit he would have made had the contract been filled.

Points of appeal, 1 through 8, assert error in not computing plaintiff's damages, if any, in accordance with Rules of Texas Cotton Association. Points 9 through 21 involve exceptions to pleading, to the court's findings of fact, and to refusal of defendant's requested findings; and point 22, the court's failure to sustain cross-action for plaintiff's breach of contract and damages computed under said Rules of $1.-50 per bale, or $72 plus $7.20 attorney's fees.

The Association Rule 2, Clause 1, governing any claim of damage made by plaintiff should be again quoted: "In the event of failure to give such notice, and/or in event of failure to deliver according to contract *the buyer shall have the option of filling such purchase in the open market,* and shall charge or credit the seller with the difference between the price paid by him in the open market and the original contract price, in addition to any expenses, or other losses incurred * * *." (Emphasis ours.)

The word "option" implies a right to act or not, as the optionee may choose. "* * * choice between two things, courses, or propositions * * *; right, power, or liberty of choosing between alternatives * * *. It has been said that it cannot be given the meaning of must or shall." 67 C.J.S. p. 511; Norwood v. Adams, Tex.Civ.App., 51 S.W.2d 625. "Its very essence is to enable the grantee to exercise the right therein granted or not to exercise it as he may elect." Hereford v. Tilson, Tex.Civ.App., 198 S.W.2d 275, 278; Corsicana Petroleum Co. v. Owens, 110 Tex. 568, 222 S.W. 154.

Appellant contends that the "option" available to buyer on default of the seller under Rule 2, Clause 1, was to purchase the deficit bales of lint cotton waste in open market, charging seller with difference in contract price and that at which the buyer had purchased in the open market; the alternative being to regard the deal as closed and take no action against the seller except as provided by Clause 1(a), "In each case the party in default shall pay to the party not in default $1.50 per bale." It is pointed out that a contract is to be construed most strongly against the person drafting same; and if, in its preparation plaintiff did not intend for the rules to govern in event of default, he could have very easily provided for the exception "as to light and heavy weight bales and except as to damages." However, there is no complaint of ambiguity in these rules; and in consequence terms thereof are to be given their ordinary and accepted meaning. Universal C. I. T. Credit Corp. v. Daniel, 150 Tex. 513, 243 S.W.2d 154.

Rules of a designated trade association, when incorporated, become part of the contract as fully as though specifically written therein; 37–A Tex.Jur., p. 146; and appellant cites Early-Foster Co. v. Gottlieb, Tex.Civ.App., 214 S.W. 520, and Magnolia Provision Co. v. Coleman, Tex. Com.App., 3 S.W.2d 412, for a proper interpretation of such trade rules when agreed upon as a method to be followed in fixing damages for a contract breach. In the foregoing cases the procedure outlined in the rules on behalf of the aggrieved party was held mandatory perforce of the words "must" or "shall", rather than "may"; a course that is held to be permissive or optional. Planters' Oil Co. v. Gresham, Tex.Civ.App., 202 S.W. 145.

Appellant's cited cases are deemed inapplicable to the situation at hand. Here the rule does not say that the buyer (in event of seller's failure to complete the contract) *must* fill his purchase in the open market, merely that he has that option, i. e., a permissive right. We are in accord with the further statement of appellee that in the instant situation "the rule does not say what buyer is supposed to do if he fails to exercise his option to fill his purchase in the open market. And we think that he therefore had a right to recover his damages, establishing them by any other means recognized by law, when appellant wrongfully failed to comply with its contract."

More analogous in fact is appellee's cited case of Dallas Waste Mills v. Early-Foster Co., Tex.Civ.App., 218 S.W. 515, 518; the Court holding in part: "In other words, while the provision in the contract may have authorized the plaintiff to purchase other linters in the open market and hold the defendant liable for the difference between the contract price and the price paid for such other linters, that provision *is not mandatory, and does not limit the parties to the remedy thereby conferred*. Therefore, conceding that the plaintiff did not comply with that provision of the contract, still its petition was so framed as to entitle it to its common-law remedy, which was the difference in the contract price and the price for which plaintiff could have sold the linters; and the plaintiff submitted testimony which will sustain the judgment upon that theory." (Emphasis ours.) In this connection Clause 1(a) is viewed as an independent penalty applicable in case the aggrieved party chooses not to resort to the permissive option of filling his purchase in the open market at all; and even then to be waived on proof of circumstances beyond control of the defaulting party.

Appellant asserts that a wrong measure of damages has been applied, even if the contract had made no reference to the rules; and correctly states that measure as being "the difference between contract price and market price at the time when, and place where, delivery should have been made." But appellee testifies to a failure to obtain the linters contracted for upon recourse to the open market and therefore entitled to recover for the damages actually sustained, i. e., lost profits. Considering Dallas Waste Mills v. Early-Foster Co., supra, the trial court's assessment of damages would appear as appropriate to the instant facts and circumstances. See also West Lumber Co. v. C. R. Cummings Export Co., Tex.Com.App., 228 S.W. 911, 912; the Court there approving the following statement of principles from Sutherland on Damages, 5th Ed., par. 52: "If it is a contract of sale and the vendor re-

fused to complete it, one rule is to ascertain that compensation by the difference between the contract price and the market value, because if the article which is the subject of the contract can be obtained in market at a market price the vendee is thereby enabled to supply himself without loss unless the price has increased. That rule goes no further, but the principle does. Where the vendee cannot obtain the article in the market, nor at all if the vendor refuses to perform his contract, that rule is not applicable, and then resort must be had to other elements of value, and recourse is had to the principle to determine the measure of redress; even a contract of resale made by the vendee and of which the vendor had no notice may be considered."

Point 14 makes complaint of error in award of attorney's fees, in that "The Court did not follow the rules of the Texas Cotton Association as to damages for failure to fulfill the contract, but followed the rules in awarding plaintiff damages for attorney's fees." Clause 3 of the Rules provides for 10% attorney's fees in case of "any claim accruing under a contract made subject to these rules"; and manifestly appellee had such a claim and was represented by counsel in its prosecution. The point is overruled.

In harmony with the foregoing conclusions, appellant's remaining points must also be overruled. Judgment of the trial court is accordingly affirmed.

### On Motion for Rehearing.

In a strong motion, appellant points out that appellee's own confirmation of purchase was conditioned upon "Rules of Texas Cotton Association to govern, except on light weight and heavy weight bales;" later, by written stipulation, the parties providing that the measure of damages "shall be determined in accordance with the rules of the Texas Cotton Association * * *"; the effect of which was to make mandatory the remedies set forth in such rules; i. e., limiting the buyer to the remedy therein provided. In third

point, appellant proceeds to demonstrate that under the wording of these rules, construed as a whole, the buyer's remedy was limited to a purchase in the open market in case of breach by the seller; not permitting a resort to common law, notwithstanding use of the term "option" in such connection.

Association Rule 2, Clause 1 includes the remedy available to the seller on buyer's failure to receive the cotton tendered, which provision was not viewed in original opinion in full perspective. Said seller's remedy should again be quoted:

"*Likewise,* if the buyer, after being notified by the seller of the time and place of delivery, *shall* fail to receive the cotton tendered him, as per the terms of the contract, on or before the delivery date specified in the contract, then the seller *shall* notify the buyer, by telegram, of his intention to resell the cotton, and *shall* extend the time for taking up the cotton 48 hours (Sundays and Holidays excepted) after dispatching such telegram. At the expiration of 48 hours, if the cotton has not been taken up, then the seller *must,* within three days thereafter, exercise his right to resell the cotton in the open market and *shall* charge or credit the buyer with the difference between the price received by him in the open market and the original contract price in addition to any expenses or other losses incurred, and when this is done the contract shall be considered fulfilled." (Emphasis ours.)

Clause 1-A then states "In each case the party in default shall pay to the party not in default $1.50 per bale", followed by a procedure under which the latter penalty may be avoided.

Here, as appellant points out, the word "option" is not used in a recitation of the *seller's* remedy, while the emphasized words "must", and "shall" make mandatory the remedy available to him. Magnolia Provision Co. v. Coleman, Tex.Com.App., 3

S.W.2d 412. In original opinion we have held that the word "option" has made permissive the remedy available to the buyer, though followed by the adverb "likewise", meaning in like manner. We now conclude that undue significance has been heretofore accorded the word "option", viewing Clause 1 in its entirety.

"The contract must be construed as a whole. It cannot be paragraphed and the paragraphs construed in severalty without reference to each other, it being apparent that they are corelated and interdependent." Davenport v. Sparkman, Tex. Com.App., 208 S.W. 658, 659 (Sup.Ct. Adopted). "It is axiomatic that, 'an agreement should be interpreted as a whole and the meaning gathered from the entire context and not from particular words, phrases, or clauses. In fact the entire agreement is to be considered to determine the meaning of each part. All provisions should, if possible, be so interpreted as to harmonize with each other.' 12 Am.Jur. 112, Contracts § 241." Alderman v. Alderman, Tex.Civ.App., 296 S.W.2d 312, 315. Under the foregoing rules of construction, if the seller *must* exercise his right to resell the cotton in the open market, likewise (in like manner) the buyer must exercise his option or right to purchase in the open market; "option" to be given its accepted meaning in the law of sales as "an agreement by which one party confers a privilege or right upon the other, in reference to a contract to sell or a sale of personal property, which the latter may exercise or not, at his discretion. For example, "an option may be given to buy chattels, * * *". 37-A Tex.Jur. (Sales) § 130, p. 289. So defined, the only right conferred upon the buyer under the rules in question, in case of seller's default, was that of filling such purchase in the open market and charging or crediting seller with the difference between the price paid in the open market and original contract price, or take no action at all; the provisions of 2A being made available in such event to the party not in default.

Appellee argues that "nowhere did the rules of the Texas Cotton Association provide that if the buyer failed to go into the open market in the exercise of his option, then the contract should be terminated and the dealing of the parties come to an end." But such result must logically follow from the mandatory nature of the rules. On the other hand, without making a new contract for the parties, we cannot engraft onto these rules the additional remedy of recourse to common law in case of appellee's failure for any reason to purchase on the open market the kind and quality of linters contracted for.

Above conclusions, reached upon rehearing, require that appellant's said motion be sustained, the cause reversed and here rendered so as to limit appellee's recovery to Clause 1(a) of $1.50 per bale, and attorney's fees, or a total amount of $79.20.

 In any event we are now of the opinion that, even in absence of the rules, the trial court has mistakenly made lost profits the measure of damages for this breach of contract. The Court did not find that lint cleaner waste of the grade and quality called for in the appellee's contract was not being bought and sold in the open market in November and December, 1955; on the contrary, finding that such commodity of various grades and qualities *were* bought and sold during the named months and year. The cotton was sold FOB cars, Idalou, Texas to be shipped to Dallas, with no part of the purchase price paid in advance. Appellee offered no evidence showing market value of the contract cotton either in Dallas or Idalou for the mentioned months and season. By exhibit attached to brief, appellant shows the prices at which lint cleaner waste was bought and sold on the market (1955 crop) as revealed by all the evidence in the case; the highest price paid being 11.75 cents per pound.

Appellee's measure of damages, (even if permittedly allowed under the contract to prosecute his common law remedy) would be based on the long established rule for breach of contracts of sale, i. e., the difference between the contract price and the market price at the time when and the place where delivery of the linters should have been made. 37-B, Tex.Jur. (Sales) p. 76. In consequence the cause should at least be reversed and remanded for another trial.

However on grounds hereinabove stated the cause is reversed and judgment of the trial court set aside. Judgment is here rendered for appellee in the sum of $79.20 as prayed in brief of appellant.